Louis L. Bassett et al., Appellants, v Bando Sangsa Company, Ltd., et al., Respondents.

First Department, June 30, 1983

APPEARANCES OF COUNSEL

*Milton S. Teicher* for appellants.

*Joseph H. Einstein* of counsel (*Gary Fox* with him on the brief; *Kassel, Hoffman, Neuwirth & Geiger,* attorneys), for respondents.

OPINION OF THE COURT

Kassal, J.

This action is based upon a claim of a joint venture agreement and relationship entered into by the parties which the plaintiffs allege were breached by the defendants. The complaint consists of 19 pages, 64 paragraphs, 8 causes of action and 11 prayers for relief, including claims

for money damages in varying amounts ranging from $99,365 to $5,000,000, a declaratory judgment, mandatory and restraining injunctions, an accounting and punitive damages. Annexed to the complaint, as exhibits, are two agreements, totaling 14 pages. The defendants, in two answers containing 112 paragraphs, responded in kind.

After careful examination of the demanded items and responses, we conclude that in response to the defendant's demand for a bill of particulars, the plaintiffs have, in substance, by their bill and supplemental bill of particulars, adequately complied in responding to the specific items demanded. As a matter of fact, in some instances compliance has taken place although the particulars sought are properly CPLR article 31 disclosure items. There are a few items not responded to which should be provided in the course of disclosure. They are: [references are to the bill of particulars] paragraphs: 11: names of the representatives of the defendants referred to therein; 16: name of the representative of Bando Sangsa referred to therein.

It is clear that the purposes of a bill of particulars, namely, to amplify the pleadings, prevent surprise and limit the issues have been more than sufficiently provided. (*State of New York v Horsemen's Benevolent & Protective Assn. [N. Y. Div]*, 34 AD2d 769.) The order of Special Term compelled a further bill of particulars based only upon the claim by defendants that the bill and supplemental bill were inadequate, whereas they in effect are seeking more than particulars, they seek disclosure. Such use of a bill of particulars to gain disclosure of evidentiary material is improper (*Aimatop Rest. v Liberty Mut. Fire Ins. Co.,* 46 AD2d 877; *Ganin v Janow,* 86 AD2d 857; *Cirelli v Victory Mem. Hosp.,* 45 AD2d 856). While we are loathe to interfere with the discretion exercised at Special Term (*Public Serv. Mut. Ins. Co. v Flatow,* 64 AD2d 514), our reluctance should not be used to subvert the underlying purpose and function to be accomplished by the service of a properly drafted demand for a bill of particulars.

Addressing the other aspect of the order, namely, the interrogatories, there are two basic issues involved, (1) are the interrogatories overbroad, burdensome, oppressive and

improper, and (2) should the court exercise its discretion to preclude interrogatories until after the examination before trial of the defendants and, then, to limit such interrogatories that are not duplicative of the information obtained at the deposition?

We have examined the interrogatories at length and conclude that they are not violative of the judicial proscriptions set forth in *Vancek v International Dynetics Corp.* (78 AD2d 842, 843) striking interrogatories as "unduly broad, patently oppressive and inappropriate." Although the task of examining and pruning them in this case is great, this results from the nature, scope and effect of the pleadings in the action on the part of both parties, alleging multiple claims and counterclaims. The court, thus, must address and examine them directly. True, there are 104 interrogatories but between the parties, their claims, affirmative defenses, counterclaims and replies, there are 64 paragraphs in the complaint, 114 paragraphs in one answer, 112 in the second answer and 7 paragraphs in the 2 replies.

CPLR 3102 (subd [a]) provides that "[i]nformation is obtainable *by one or more* of the following disclosure devices" (emphasis added). Thus, there is no limitation in the CPLR as to which or how many disclosure devices may be employed. However, CPLR 3103 (subd [a]) does empower the court to issue a protective order "denying, limiting, conditioning or regulating the use of any disclosure device * * * to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts". Thus, there is vested in the court the power to prevent unreasonable or duplicative disclosure.

■ With these considerations in mind, we find that Special Term abused its discretion in this complex commercial action by directing, without any further basis, that the plaintiff must first proceed by way of examinations before trial prior to interrogatories. As we observed in *Comstock & Co. v City of New York (Bower Bay WPCP)* (80 AD2d 805, 807) "interrogatories are appropriate and useful in enabling the seeking party to obtain lists and other detailed information to set the stage for meaningful depositions." Justice SANDLER in dissenting (p 807), agreed as to the propriety and usefulness of interrogatories when the

answers will "require an examination of records and documents and some consultation with others."

In this case, there are scores of agreements, telex communications and other documents. Interrogatories probably are the most efficacious device to sort out and identify them for the conduct of meaningful examinations before trial. Although there are numerous interrogatories, that fact, in and of itself, is not determinative. The dispositive criteria is dependent upon the particular facts and circumstances involved and whether the disclosure sought is abusive, i.e., whether it results in unnecessary expense, annoyance, embarrassment or prejudice so as to justify court intervention.

One other aspect of the order of Special Term merits further attention. We agree that there is a potential for abuse when a party resorts to successive disclosure devices, albeit authorized by CPLR 3102. One of the responsibilities of the court is to prevent any such abuse. In a proper case, CPLR 3104 authorizes the supervision of disclosure by the court or by a referee appointed for that purpose. Although, on this record, it does not appear that supervision is necessary here, to avoid the potential for abuse in the future, there should be no duplication of the interrogatories in any subsequent deposition taken by the plaintiffs. Any future disclosure should be limited to supplementation, not duplication.

Accordingly, the order, Supreme Court, New York County (KLEIN, J.), entered December 20, 1982, granting defendants' motion to preclude and for a protective order, directing plaintiffs to serve a further bill of particulars and vacating plaintiffs' interrogatories, should be reversed, on the law, the facts and in the exercise of discretion, with costs, the motion denied and defendants directed to serve answers to plaintiffs' interrogatories within 60 days after service of the order to be entered on this appeal.

Ross, J. (dissenting). I concur in Justice FEIN's dissent.

Special Term did not abuse its discretion in ordering the plaintiff to serve a further bill of particulars. In this concededly complex case, "defendants are entitled to the fullest bill of particulars and * * * the court should err on

the side of requiring more rather than less information to be furnished" (*Nelson v New York Univ. Med. Center,* 51 AD2d 352, 355).

It is my opinion, that when plaintiffs are represented by experienced counsel, this court should not spend its time, in the words of the majority, on "the task of examining and pruning" 104 interrogatories. We said in *Vancek v International Dynetics Corp.* (78 AD2d 842, 843) "The responsibility of an attorney who serves interrogatories is to make a bona fide effort to conform to the well-settled rules and not to attempt to shift the burden by serving interrogatories that are unduly broad, patently oppressive and inappropriate. In such circumstances the court will not undertake the responsibility of pruning the interrogatories."

These words are equally applicable herein.

FEIN, J. (dissenting). I would affirm the order appealed from. An able and experienced Special Term Justice has passed upon the matters involved respecting the bill of particulars and the interrogatories. A careful screening procedure has been set up at Special Term precisely for the purpose of dealing with motions addressed to bills of particulars, disclosure and discovery matters, and interrogatories. That procedure was followed in this case.

In my view we should not interfere with Special Term's rulings on matters such as this, unless there is clear error and an abuse of discretion. There is no such showing here, albeit plaintiff's attorney has cavalierly characterized the procedure as follows: "The motion came on to be heard at Special Term, Part 1A on December 10, 1982 before a Law Clerk. His recommendation was incorporated in an order signed by Hon. Alfred F. Klein, from which this appeal is taken".

The issues are whether interrogatories as overbroad, burdensome, oppressive and improper as these should be pruned or vacated and whether the court should exercise its discretion to preclude interrogatories until after depositions and then to limit such interrogatories so as not to duplicate information obtained at the depositions. It is clear that the order of priority in determining which disclosure device to employ ordinarily rests with the parties to

the litigation, and the court should interfere only where there has been an abuse (CPLR 3103, subd [a]). In this case, the plaintiff had already served a notice of deposition prior to service of the interrogatories. As a matter of fact, an agreement had apparently been reached by the attorneys concerning the order and time of taking of depositions. In the face of such notices and agreement, the service by the plaintiff of the interrogatories was improper, as Special Term appropriately ruled after consideration of the procedure followed by the parties.

Noticing of an oral deposition simultaneously with the service of interrogatories is not necessarily improper. However, in the face of the agreement between the parties and the form and scheduling of the interrogatories, it was appropriate for Special Term to direct that the deposition proceed first (*Comstock & Co. v City of New York* [*Bower Bay WPCP*], 80 AD2d 805, 807; see *Barouh Eaton Allen Corp. v International Business Machs. Corp.*, 76 AD2d 873).

With respect to the breadth and propriety of the interrogatories, the majority opinion has appropriately characterized them as follows: "Although the task of examining them and pruning them in this case is great, this results from the nature, scope and effect of the pleadings in the action on the part of both parties, alleging multiple claims and counterclaims. The court, thus, must address and examine them directly. True, there are 104 interrogatories but between the parties, their claims, affirmative defenses, counterclaims and replies, there are 64 paragraphs in the complaint, 114 paragraphs in one answer, 112 in the second answer and 7 paragraphs in the 2 replies." Unaccountably, in the face of this concession that pruning is required, the court approves the entire set of interrogatories.

I respectfully suggest that an examination of these interrogatories demonstrates that they do require pruning and that the burden of pruning them should not be imposed upon the court (*Comstock & Co. v City of New York* [*Bower Bay WPCP*], *supra*; *Vancek v International Dynetics Corp.*, 78 AD2d 842).

An examination of some of the interrogatories demonstrates plainly their impropriety. Thus, the very first in-

terrogatory: "State the place of incorporation of defendant Bando Sangsa Co., Ltd. (Bando Sangsa)." This interrogatory is improperly addressed to defendants other than the defendant named in the interrogatory, actually a nonparty, because of nonservice at the time the interrogatories were served.

The third interrogatory (subd D) states: "The substance of what each of the said persons stated in the said discussions and negotiations." Palpably this interrogatory is founded upon paragraph 13 of the complaint and defendants' answer to it. Plainly a response to the interrogatory would require an extensive and detailed narrative, not the function of an interrogatory.

Paragraph 13 reads as follows: "For some time prior of October, 1978, the parties carried on extensive negotiations with the purpose of entering into a joint venture (Venture) to engage in the business of importing and manufacturing wearing apparel. They agreed to organize a corporation in the State of New Jersey to carry on the business of the Venture and the Bassett Companies would sell and transfer their respective assets to such corporation. Payment therefor was to be made by the Venture with funds supplied by Bando Korea or its subsidiary Bando America, and the capital stock of the Venture would be issued equally to Bassett and to a nominee of Bando Korea or to its subsidiary, Bando America."

Defendants' answer to that allegation reads as follows: "Deny each and every allegation contained in Paragraph 13, except admit that certain of the parties engaged in certain negotiations and discussions."

Interrogatory 4B ("Set forth the purpose or reasons for incorporating Darby") is plainly improper, calling for opinions and interpretations, much of which is irrelevant (*Blotcher v Upjohn Co.*, 54 AD2d 851). Equally improper is interrogatory No. 6: "Describe the facts and circumstances surrounding defendants' execution of the joint venture agreement referred to in paragraph 16 of the complaint (Ex. A thereof)."

Paragraph 16 of the complaint reads: "In March, 1979, the parties entered into the joint venture agreement

(Agreement), a copy of which is annexed hereto as Exhibit A and Darby continued the business for which the Venture was formed."

The answer reads as follows: "Deny each and every allegation contained in Paragraph 16, except admit execution of the document referred to." Thus, in face of a denial that there was a joint venture agreement, the interrogatory so characterizes the agreement and then requires a narrative about the "facts and circumstances surrounding its execution". What that means and how it is to be answered is left to the imagination. It improperly calls for a legal conclusion, massive amounts of information, opinions and interpretations (*Blotcher v Upjohn Co., supra*).

Interrogatory No. 17 reads as follows: "Describe the actual, not nominal, consideration paid for the purchase of the aforesaid stock of Darby and the actual value thereof." This relates to paragraph 22 of the complaint, which reads as follows: "Plaintiffs, knowing they would be unable to meet the financial obligations they had undertaken for Darby in reliance on the Agreement and on defendants' aforesaid promises and representations, and that the Bassett Companies faced substantial losses and possible insolvency, and being under such business compulsion and believing that no other relief was available, were unable to exercise their free will, and surrendered and succumbed to defendants' extortive, coercive and illegal demands. Accordingly, Bassett and his nominee resigned as officers and directors of Darby, Bassett sold his stock of Darby to defendant Bando America, or its nominee, for $1.00 and plaintiffs executed the extortive agreement dated May 15, 1980, a copy of which is annexed hereto as Exhibit B."

The answer reads as follows: "Deny each and every allegation contained in Paragraph 22, except admit that Bassett and certain others resigned as officers and directors of House of Darby and that certain stock of House of Darby was sold for $1.00 and that the document referred to was signed by the parties."

Plainly the interrogatory implies that there was a consideration other than the stated consideration, and asks for an opinion on the value of the stock, hardly the function of an interrogatory.

Interrogatory No. 20 reads as follows: "Describe the facts and circumstances under which the agreement of May 15, 1980, Ex. 'B' was executed by plaintiffs and set forth an executed copy thereof." This relates to the agreement referred to in paragraph 22 of the complaint and once again requires a statement of "the facts and circumstances" under which the agreement was executed, and requires the defendant to set forth an executed copy, which the plaintiff has already done. The impropriety of this interrogatory is manifest.

Interrogatory No. 22 calls upon defendants to state whether any of them refused to purchase certain stock and assets, as alleged in paragraph 23 of the complaint. The answer denies each and every allegation contained in that paragraph. The interrogatory reads as follows: "State whether defendants or any of them refused to purchase the stock and or assets of the Bassett companies or any of them as alleged, in paragraph 23 of the complaint, and if so, state the reasons why defendants refused to purchase said stock." This interrogatory blatantly ignores the answer and requires defendant to "state the reasons" for defenses, manifestly improper.

A similar vice may be found in interrogatory No. 36. Paragraph 70 of the answer pleads an affirmative defense to the first cause of action in some detail responding to the first cause of action which asserts that the parties entered into a joint venture agreement annexed to complaint as Exhibit A. Defendant denied execution of any joint venture agreement. Nonetheless, interrogatory No. 43B reads as follows: "Describe the instrument or agreement which plaintiff violated by failing to sell or transfer the stock or assets of the Bassett companies to Darby as alleged in paragraph 70b of the answer."

Interrogatory No. 43D reads as follows: "State whether it was plaintiffs' obligations to capitalize Darby in the sum of $1,000,000 and if so set forth the terms of the agreement and the date thereof which require plaintiffs to so capitalize Darby, as referred to in paragraph 70f of the answer."

Paragraph 90 of the answer reads as follows: "The name Tattersall is not a valid trademark because it is either (a) a generic name, (b) descriptive or (c) misdescriptive."

Interrogatory No. 55 reads as follows: "Set forth the facts upon which the assertion is made in paragraph 90 of the answer that plaintiffs trademark is 'misdescriptive'."

Plainly this calls for opinions and legal conclusions. These interrogatories are replete with such improprieties. They are overbroad, burdensome and oppressive. They should be vacated and not pruned. (*Comstock & Co. v City of New York* [*Bower Bay WPCP*], *supra; Vancek v International Dynetics Corp.*, *supra.*)

The majority properly observes that interrogatories are useful for the purpose of determining the existence of documents to set the stage for meaningful depositions. However, this does not justify interrogatories such as No. 75 ("Set forth copies of all orders referred to in paragraph 101 of the sixth counterclaim"). We have frequently pointed out that the use of "all" is inappropriate (*City of New York v Friedberg & Assoc.*, 62 AD2d 407). Plainly if there are a substantial number of orders, an interrogatory cannot require the opposing party to make and furnish copies. CPLR 3131 does not so intend. Documents, etc., are to be identified, and an opportunity afforded to examine or make copies, not to furnish them. This particular technique runs throughout the interrogatories. There are many others which call for conclusions of law, opinions, extensive narrative as well as precise details. These interrogatories embody every vice. They should be vacated, *in toto.*

The facts and circumstances of this case demonstrate that the disclosure sought will result in unnecessary expense, annoyance and embarrassment. I have no quarrel with the general statements made in the majority opinion. I respectfully submit that it does not deal properly with the interrogatories here involved.

The suitable remedy is not pruning by the court but rather a vacatur of the entire demand. The fact that the defendants' motion to vacate in some part consisted of nitpicking, does not warrant approval of the demand. "The burden of serving a proper demand is upon counsel and not for the courts to correct a palpably bad one." (*Itzkoff v Allstate Ins. Co.*, 59 AD2d 854, 855.) Where in large part interrogatories are as unwarranted as these, the court should vacate them, despite the deficiencies in the notice

and motion to vacate. Counsel for both sides should be directed to adhere to the appropriate procedure.

Under the circumstances, Special Term did not abuse its discretion by directing that the depositions go forward and that new interrogatories be served upon the completion of the depositions.

SANDLER, J. P., and ASCH, J., concur with KASSAL, J.; Ross and FEIN, JJ., dissent in separate opinions.

Order, Supreme Court, New York County, entered on December 20, 1982, reversed, on the law, the facts, and in the exercise of discretion, the motion denied and defendants directed to serve answers to plaintiffs' interrogatories within 60 days after service of this court's order. Appellants shall recover of respondents $50 costs and disbursements of this appeal.