Louis Wallach, J.
In an action for a declaratory judgment declaring that the plaintiff is entitled to recover no-fault benefits under an automobile liability insurance policy issued by the defendant to the plaintiff, the latter moves for summary judgment.
The operative facts are not denied. On September 17, 1973 the defendant issued an automobile liability policy to the plaintiff for a one-year period. Effective February 1, 1974, pursuant to the New York Comprehensive Automobile Insurance Reparations Act (Insurance Law, art. XVIII), the policy was amended to include no-fault benefits. Although the date the defendant was furnished with the amended policy, including its terms and conditions, does not appear in any of the affidavits, it does appear on the face of the defendant’s exhibits that the policy was not actually amended until March 5, 1974 or later, that being the date the amended policy was countersigned.
On February 28, 1974 the plaintiff’s automobile was struck in the rear on the Van Wyck Expressway, causing injuries to her leg and pelvis. She was taken by ambulance to the Jamaica Hospital where she received emergency treatment and was discharged. On March 6, 1974 she was taken from *1092 her home to the Interboro Hospital where she was confined until March 17, 1974. On April 8, 1974 she was brought to an attorney’s office where a no-fault claim form was prepared and mailed to the defendant. This claim was postmarked April 10, 1974, but the defendant contends that it did not receive it until April 15, 1974. The defendant, noting the allegedly "late notice”, requested further information from the plaintiff, including the reason for the "delay”. It reserved its right to reject the claim. On May 7, 1974 the plaintiff submitted to an examination by the defendant’s claims adjuster and signed a statement prepared by him. On June 27, 1974 she also submitted to a physical examination by the defendant’s physician. The report of this physician confirms that the plaintiff sustained injuries. On July 5, 1974 the defendant disclaimed coverage of any no-fault benefits on the ground that plaintiff had breached a condition of the policy requiring notice of the accident "as soon as reasonably practicable”.
The defendant has pleaded two affirmative defenses, one based on lack of notice and the other based on an alleged failure to provide all pertinent information necessary to determine the amount due and payable. The latter defense is stricken since it was not raised in the letter of disclaimer (11 NYCRR 65.6 [d] and Appendix 13, Denial of Claim Form; 11 NYCRR 216.3 [b]) and is not supported by any facts in the opposing affidavits submitted on this motion.
It is well settled that language in ordinary insurance policies that notice is to be given as soon as reasonable or as soon as practicable requires that written notice be given within a reasonable time under all of the circumstances. (Deso v London & Lancashire Ind. Co., 3 NY2d 127; Allstate Ins. Co. v Manger, 30 Misc 2d 326.) A failure to satisfy the requirements of this clause by timely written notice vitiates the contract.
The rule is well stated in Allstate Ins. Co. v Manger (30 Misc 2d 326, 329, supra):
"Delay on the part of an insured to give notice may be excused where he lacks knowledge of the accident or of an injury and also where there is a justifiable lack of knowledge of the fact that there was insurance coverage. If such excuses are claimed then there is a triable issue as to whether the notice was timely. (Gluck v London & Lancashire Ind. Co., 207 Misc 2d 471, revd 2 AD2d 751, affd 2 NY2d 953.) Delay on the part of the injured party to give notice may be excused where he had difficulty ascertaining the identity of the insured or *1093 the insurer (Lauritano v American Fid. Fire Ins. Co., 3 AD2d 564, affd 4 NY2d 1028), but he must show that he exercised diligence. (Safeguard Ins. Co. v Baldauf, 20 Misc 2d 667.)
"Where no excuse is offered the question of whether notice was timely is one of law for the court. (Greenwich Bank v Hartford Fire Ins. Co., 250 N. Y. 116, 128.) Thus unexcused delay of 51 days (Deso v London & Lancashire Ind. Co., 3 NY2d 127, supra), 27 days (Reina v United States Cas. Co., 228 App. Div. 108, affd. 256 N. Y. 537), 22 days (Rushing v Commercial Cas. Ins. Co., 251 N. Y. 302, supra), 30 days (Mason v Allstate Ins. Co., 12 A D 2d 138, supra) and 49 days (Abitante v Home Ind. Co., 240 App Div 553) have been held as matter of law to violate the condition of the policy.”
Accordingly, under general principles of insurance law this court would be constrained either to grant summary judgment to the defendant since the plaintiff has failed to show sufficient facts to demonstrate due diligence in giving notice, or to deny summary judgment to the plaintiff on the basis that her hospitalization during part of the period between the accident and the claim creates a sufficient inference of excuse to warrant a trial on the question of reasonableness.
The issue in the instant case, however, is whether no-fault insurance coverage differs enough from other types of insurance so that new principles of construction should be utilized. This court is of the opinion that it does.
The impetus for no-fault coverage in New York came from the Stewart Report to Governor Rockefeller, dated February 12, 1970, which was published under the title: "Automobile Insurance * * * For Whose Benefit?” This report found certain disadvantages in the fault system of handling personal injury and damage costs of automobile accidents, both theoretical and practical. It also listed the criteria for a "good system” to replace the fault system and made a proposal for a "better system”. Although the Stewart proposal was not enacted in total, the study, particularly those parts which criticized the fault system and set forth the criteria for a better system, was the forerunner of the present no-fault law. Among the principal deficiencies of the fault system were found to be uncompensated victims, delay, unpredictability, lack of co-ordination of benefits, hindrance to rehabilitation, inefficiency and overreaching and dishonesty of insurance companies and others. The "good system” was to provide compensation for all victims, efficiency, prompt payment, reli *1094 ability and fair settlement of claims. It was also to help, rather than to hinder, the work of the courts so that automobile cases would not continue to clog the calendars.
The New York no-fault law attempted to accomplish these goals by means of mandatory personal injury protection which is required to be provided in all owners’ policies of liability insurance (Insurance Law, § 672), by limiting the common-law right to recover damages for personal injuries arising out of negligence in the use of a motor vehicle where the damages do not exceed a specific threshold (Insurance Law, §§ 671, 673; Schwartz, No-Fault Insurance: Litigation of Threshold Questions Under The New York Statute — The Neglected Procedural Dimension, 41 Brooklyn L. Rev. 37, 42, 43), and by other provisions designed to implement the law. The Superintendent of Insurance was charged with the duty of approving insurance policy forms for no-fault coverage and establishing minimum benefit standards and regulations. (Insurance Law, §§ 21, 672, subd. 4.) The superintendent’s regulations implementing the no-fault law and approved form of policy are set forth in Part 65 of vol. 11 of the New York Code of Rules and Regulations. The approved policy contains the following conditions (11 NYCRR 65.2 [a]):
"Action Against Company. No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with the terms of this coverage.
"Notice. In the event of an accident, written notice setting forth details sufficient to identify the eligible injured person, along with reasonably obtainable information regarding the time, place and circumstances of the accident, shall be given by, or on behalf of, each eligible injured person, to the Company, or any of the Company’s authorized agents, as soon as reasonably practicable. If an eligible injured person or his legal representative institutes a proceeding to recover damages for personal injury under Section 673(2) of the New York Insurance Law, a copy of the summons and complaint or other process served in connection with such action shall be forwarded as soon as practicable to the Company or any of the Company’s authorized agents by such eligible injured person or his legal representative.
"Proof of Claim; Medical and Earnings Reports. As soon as reasonably practicable, the eligible injured person or someone on his behalf shall give to the Company written proof of claim, including full particulars of the nature and extent of *1095 the injuries and treatment received and contemplated. Upon request by the Company the eligible injured person or someone on his behalf shall:
(a) execute a written proof of claim under oath;
(b) provide authorization that will enable the Company to obtain medical records; and
(c) provide any other pertinent information that may assist the Company in determining the amount due and payable.
"The eligible injured person shall submit to medical examination by physicians selected by, or acceptable to, the Company when, and as often as, the Company may reasonably require.
"Arbitration. In the event any person making a claim for first party benefits and the Company do not agree regarding any matter relating to the claim, such person shall have the option of submitting such disagreement to binding arbitration pursuant to procedures promulgated or approved by the Superintendent of Insurance.”
The court questions whether the superintendent was aware of the legal consequences of the notice condition. Under existing case law this language would serve to bar all claims not made almost immediately unless the claimant could show due diligence or some reasonable excuse for delay. A determination of the factual question of due diligence or excuse would have to be made by either the court or in an arbitration proceeding. Accordingly, the goal of decreasing litigation in auto cases would not be met. Moreover, many laymen would not think of making a claim until they had either received the medical bills or until they knew the extent of their injuries. They might easily overlook the notice requirement which is buried in typical insurance policy small print. Therefore, it is likely that a strict interpretation of the notice condition would result in a great number of uncompensated victims, thus causing a failure to accomplish the principal goal of no-fault compensation. These victims will be worse off than under the old system, since they may not sue the wrongdoer and since the superintendent has directed that "Blue Cross” type health insurance not provide duplicate benefits recoverable under automobile no-fault policies. (11 NYCRR 52.16 [h].) This latter rule was to implement the Stewart Report’s goal of eliminating a "lack of coordination of benefits”, the existence of which was supported by the finding that 91% of all workers in the State' are covered by health insurance. (Automobile Insurance *1096 * * * For Whose Benefit?, p 30.) The elimination of health insurance benefits and the right to sue the wrongdoer will only work if all victims are compensated by no-fault.
The notice condition in the no-fault policy is substantially different from that used in the uninsured motorist endorsement which the superintendent also must approve under subdivision 2-a of section 167 of the Insurance Law. There, notice must be given within 90 days or as soon as practicable. Under that language a claimant has, at the very least, 90 days to give notice of claim and longer, if the delay is reasonable under all the circumstances. Thus, if notice is given within 90 days, there does not have to be any judicial determination of reasonableness. Even "qualified persons” under uninsured motorist coverage who do not pay a premium are granted at least 90 days to make notice of most claims (Insurance Law, § 608, subds [a], [b]), as are persons who have claims against municipalities. (General Municipal Law. § 50-e.) The Legislature did not specify a stricter standard for no-fault claims and the superintendent probably did not intend it. There is no logical reason for such a stricter standard to apply to no-fault claims. These persons pay a premium for first party coverage. Since fault is not involved, there is no necessity for immediate investigation of the circumstances of the accident by the carrier. There is little likelihood of prejudice to the carrier by reason of a delay of 90 days. To apply a stricter standard would do violence to the superintendent’s own rules to carriers for settlement of claims for first party benefits as expressed in Chapter 65.6(a) of volume 11 of the New York Code of Rules and Regulations (11 NYCRR 65.6 [a]):
"(a) Guiding principles.
(1) Have as your basic goal the prompt and fair payment of all automobile accident victims.
(2) Assist the applicant in the processing of his claim. Do not treat him as an adversary.
(3) Do not demand verification of facts unless there are good reasons to do so. When verification is necessary it should be done as expeditiously as possible.
(4) Clearly inform the applicant of the insurer’s position regarding any disputed matter.
(5) Respond promptly, when a response is indicated, to all communications from insureds, applicants, attorneys and any other interested persons.
*1097 (6) Every insurer shall distribute copies of this section to every person directly responsible to it for the handling and settlement of claims for first party benefits, and every insurer shall satisfy itself that all such personnel are thoroughly conversant with and are complying with this section.”
In short, if a large number of people are eliminated from receiving no-fault benefits merely because of short, unexplained or unexcused delays in giving notice, the question posed in the title of the Stewart Report, "Automobile Insurance * * * For Whose Benefit?” could only be answered * * * "The Insurance Industry!”
Of course, this answer is unacceptable and in order to avoid it the language in the no-fault policy should not be interpreted in the same manner as similar language in other types of insurance policies. Taking into consideration the broad social purposes of the no-fault law, as well as the limitation on the right to sue the wrongdoer, the loss of the "Blue Cross” type health insurance benefits in automobile accidents and the fact that the Legislature did not specify the notice conditions, but merely gave authority to the superintendent to approve policy forms "to satisfy the requirements” of the law, that individual policyholders have no power to negotiate or modify the insurance contract, that the conditions are buried in small print, that other statutes and policy forms generally permit at least a 90-day period for giving notice, and that the implementation of a lesser period will frustrate the legislative scheme, this court is of the opinion that in the case of no-fault coverage, notice given within 90 days of an accident is, as a matter of law, given as soon as reasonably practicable. Where such notice is given, a trial of the issue of reasonableness is not necessary. If notice is not given within 90 days, then a trial or arbitration proceeding may be held to determine if, on the basis of all the facts and circumstances, the delay in giving notice was reasonable.
The court suggests that the superintendent or the Legislature consider changing the terms of the notice conditions and also consider a requirement that all conditions be printed on a cover sheet attached to the front of all no-fault policies in large type in clear language so that auto accident victims are not further victimized by technicalities in the policy and their lack of legal sophistication.
The instant motion by the plaintiff for summary judgment for the relief demanded in the complaint is granted. The court *1098 declares that the notice mailed to the defendant on April 8, 1974 and received by it on April 15, 1974 was, as a matter of law, given as soon as reasonably practicable and that the defendant is obligated to honor the plaintiff’s claim for no-fault benefits.
The plaintiff’s attorney, in his affidavit, has requested an award of counsel fees pursuant to section 675 of the Insurance Law. No cause of action for such relief is included in the complaint. Accordingly, counsel fees are denied without prejudice to a separate action or an arbitration proceeding for such relief.