OPINION OF THE COURT
Charles J. Markey, J.
The instant controversy raises issues of immense importance governing the permissible scope of discovery in litigation for no-fault first-party benefits. To illustrate the significance of the legal issues posed, this court has consolidated six motions only for purposes of this decision.
The six cases have several common denominators. An insurer has served multiple discovery notices on a plaintiff assignee medical provider of no-fault first-party benefit services. In each of the six motions, an insurer seeks to strike plaintiff’s complaint or to preclude plaintiff from testifying at trial for failing to respond to the discovery notices or to compel answers to the various demands. In the six motions, although the movant insurers attached copies of the pleadings, they failed to attach copies of the NF-10, the all-important denial of claim form (11 NYCRR 65-3.8), or a timely demand for verification, the NF-3 or NF-5, or demand for additional verification (11 NYCRR 65-3.5). In none of the motions was there a discussion by the movant insurers of the relevancy of the information sought, especially in terms of a timely denial or a timely demand for verification. In each of the motions, however, the plaintiffs counsel not only failed to cross-move for a protective order, but also did not oppose the motion or even appear in court on the return date.
The legal issues of first impression raised by the six consolidated motions require resolution of the permissible scope of discovery in no-fault litigation, definition of a barometer or yardstick by which to measure whether a discovery request in a no-fault action is legitimate or simply vexatious and oppressive, and, finally, a determination of the degree of judicial tolerance to be afforded to a palpably improper discovery demand despite a plaintiff’s inaction. These issues are of weighty magnitude because of the thousands of no-fault cases that arise each year throughout this state and the discovery disputes that arise therefrom.
In these six actions for no-fault benefits, a health care provider who rendered medical or chiropractic treatment to the *677 plaintiffs patient, in exchange for an assignment of the patient’s right to collect no-fault benefits, seeks recovery from a defendant insurer. The No-Fault Law replaced the common-law right to seek tort recovery with a statutory system designed to provide “a quick, sure and efficient system for obtaining compensation for economic loss suffered as a result of [automobile] accidents” (Walton v Lumbermens Mut. Cas. Co., 88 NY2d 211, 214 [1996]).
Prior to discussing the specifics of each of the motions, a review of the rubrics in No-Fault Law is essential in arriving at judicial holdings in this controversy. First, an insurer must make a timely denial of benefits within 30 days of receipt of a claim in a denial of claim form, the NF-10, or must have timely demanded a verification. Failure to do so will result in a defendant insurer waiving all defenses — except for those of lack of coverage and fraud — to a claim and thus exposing itself to a successful plaintiffs summary judgment motion (Central Gen. Hosp. v Chubb Group of Ins. Cos., 90 NY2d 195 [1997]; A.B. Med. Servs. PLLC v Nationwide Mut. Ins. Co., 6 Misc 3d 70 [App Term, 2d Dept 2004]; Diagnostic Rehab. Medicine Serv. P.C. v Travelers Indem. Co., 6 Misc 3d 685 [App Term, 2d Dept 2004]; King’s Med. Supply Inc. v Country-Wide Ins. Co., 5 Misc 3d 767 [Civ Ct, Kings County 2004]).
No better case illustrates the importance of mailing a timely denial or timely demand for a verification than the Court of Appeals decision in Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co. (90 NY2d 274 [1997] [4-3 decision]). In that case, although it was later established that the plaintiffs assignor was legally drunk at the time of the motor vehicle accident, the High Court sustained a medical provider’s entitlement to summary judgment. The insurer’s failure to issue a timely denial or a timely demand for verification was deemed a waiver of all defenses and did not even entitle the insurer to responses to a demand for written interrogatories. During the requisite period for issuing a denial or demand for a verification, “the carrier chose to sit on its rights and do nothing in this respect” {id. at 280).
The Court of Appeals in Presbyterian Hosp. stated that “a core and essential objective” of the insurance regulations is “to provide a tightly timed process of claim, disputation and payment” {id. at 281). The Court of Appeals, in pertinent part, stated:
“No-fault reform was enacted to provide prompt uncontested, first-party insurance benefits . . . The *678 tradeoff of the no-fault reform still allows carriers to contest ill-founded, illegitimate and fraudulent claims, but within a strict, short-leashed contestable period and process designed to avoid prejudice and red-tape dilatory practices.” (Id. at 285.)
Although the insurer actually later procured proof that the assignor was legally drunk while operating a motor vehicle— certainly conduct that offends our State’s public policy and criminal law — the Court of Appeals refused to permit the assertion of a late defense of intoxication and even to allow discovery on the issue. Since the insurer failed to adhere to the “tightly timed process” (id. at 281), the Court of Appeals expressly did not let the defendant insurer “string out belated and extra bites at the apple” (id. at 286).
The importance of a timely denial is underscored by the Appellate Division’s recent decision forbidding an insurer from relying on a prior blanket denial that simply stated that it would dishonor further claims. In A & S Med. P.C. v Allstate Ins. Co. (15 AD3d 170 [1st Dept 2005]), an insurer’s failure to deny a specific claim in timely fashion, despite a previously issued blanket denial that advised that all future claims would be rejected, warranted the grant of a medical provider’s motion for summary judgment.
An insurer’s denial must be made “with a high degree of specificity of the ground or grounds on which the disclaimer is predicated,” and an insurer will not be permitted to assert a defense not specifically made in the NF-10, even though a denial of claim may have been previously issued in a timely manner (General Acc. Ins. Group v Cirucci, 46 NY2d 862, 864 [1979] [per curiam]; accord Paul M. Maintenance, Inc. v Transcontinental Ins. Co., 300 AD2d 209, 212 [1st Dept 2002]; see also, Universal Acupuncture Pain Servs. v Lumbermens Mut. Cas. Co., 195 Misc 2d 352, 354-355 [Civ Ct, Queens County 2003] [citing cases]). Thus, if an insurer’s NF-10 denied a claim only on grounds of intoxication, it cannot later be permitted to assert another defense, such as the invalidity of an assignment, which was not preserved in the denial of claim form (see, e.g., Bonetti v Integon Natl. Ins. Co., 269 AD2d 413 [2d Dept 2000] [defense of allegedly unnecessary surgeries not preserved]; Presbyterian Hosp. in City of N.Y. v Aetna Cas. & Sur. Co., 233 AD2d 433 [2d Dept 1996] [defense of invalid assignment not preserved]; St. Clare’s Hosp. v Allcity Ins. Co., 201 AD2d 718 [2d Dept 1994] [insurer’s failure to deny claim in 30 days]).
*679 In accord with the Presbyterian Hosp. holding preventing an insurer from stringing out the process by prejudicial, dilatory practices and taking extra bites at the apple (90 NY2d at 285-286), the bottom line is that a defendant insurer “must ‘stand or fall upon the defense upon which it based its refusal to pay’ ” (King v State Farm Mut. Auto. Ins. Co., 218 AD2d 863, 865 [3d Dept 1995], quoting Beckley v Otsego County Farmers Coop. Fire Ins. Co., 3 AD2d 190, 194 [3d Dept 1957], appeal dismissed 2 NY2d 990 [1957]). The Appellate Division, Second Department, has repeatedly warned insurers against either repudiating liability or defending on one particular ground and then, shifting gears, creating new means or defenses to avoid payment (see, Lee v American Tr. Ins. Co., 304 AD2d 713, 714 [2003]; Matter of State Farm Ins. Co. v Domotor, 266 AD2d 219, 220-221 [1999]; accord Subia v Cosmopolitan Mut. Ins. Co., 80 Misc 2d 1090, 1092 [Sup Ct, Queens County 1975] [striking defense from answer that was not raised in the denial of claim form]).
Comprehension of the foregoing principles is essential for illuminating the way on what matter is discoverable in a litigation for no-fault first-party benefits. The Legislature created the No-Fault Law in derogation of the common law (Walton, 88 NY2d at 214), and Insurance Department regulations and case law make extra demands on the methods of denial, verification, payment, and disputation. If the foregoing holdings are ignored, then no-fault litigation would be treated like any other garden variety common-law litigation with a full panoply of discovery rights, turning no-fault litigation to its present condition — a Frankenstein monster that has assumed a life force of its own, becoming so unmanageable and uncontrollable that it acts out in ways never envisioned by its creator.
In none of the six motions did the movant attach a copy of a denial of claim, the NF-10, or a timely demand for verification. Interestingly, each insurer’s counsel appended the pleadings, including its answer so as to demonstrate, seemingly and superficially, that the demanded discovery of information and documents must surely come within some affirmative defenses contained therein. The discussion above, however, highlights that what is essential is not some invocation of a defense or the inclusion of an answer containing numerous affirmative defenses, but proof that a particularized defense was stated in a denial of claim with a high degree of specificity and was done so timely.
In an unreported short form order, Judge Kevin J. Kerrigan, in Lopes v Liberty Mut. Ins. Co. (Civ Ct, Queens County, Dec. *680 18, 2003, Index No. 67693/00), required parties to a discovery dispute in a no-fault first-party benefits litigation to include copies of all the pleadings and the denial of claim form. Although copies of the pleadings are desirable, especially if the remedy sought is to strike a pleading, Judge Kerrigan’s insistence for the NF-10 is irrefutable, if the Court of Appeals’ and Appellate Division’s holdings about the centrality of the denial of claim are to retain any vitality. Review of the NF-10 is indispensable; it is the appropriate yardstick for measuring the legitimacy of the demanded discovery.
This court is also persuaded by another unreported decision. In St. Luke’s Roosevelt Hosp. v American Tr. Ins. Co. (Sup Ct, Nassau County, Dec. 20, 2002, Index No. 8119/02), Justice Ute Wolff Lally, in granting plaintiffs motion for summary judgment, precluded consideration of two affirmative defenses contained in an insurer’s answer and other objections raised by its counsel that were not specifically contained in the denial of claim or a timely demand for verification (accord Subia, 80 Misc 2d at 1092, supra). This court agrees with both Justice Lally and Judge Kerrigan.
Thus, as an initial matter, this court holds that failure by an insurer to include a copy of its denial or demand for verification in a discovery motion, whether seeking to strike pleadings, preclude evidence, or compel discovery, or to furnish a justifiable, compelling reason for not including it, will be per se grounds for denial of the motion.
Next, despite the failure by the movants to include proof of either the NF-10 or a timely demand for verification, the court will examine the nature of the discovery demanded by the insurer in each of the six motions.
1. Metropolitan Radiological Imaging, EC. v State Farm Mut. Auto. Ins. Co.
Plaintiff seeks the sum of $1,758.40 for radiological services. Defendant’s answer includes no less than 39 “separate and distinct” affirmative defenses to the entire action. Since the movant insurer failed to include a denial of claim form as an exhibit to its motion papers, it is impossible to determine whether all 39 defenses were previously stated, “with a high degree of specificity” (General Acc. Ins. Group v Cirucci, 46 NY2d at 864) in the NF-10 and in timely fashion. At any rate, the asserted 39 affirmative defenses run the gamut, ranging from an alleged invalid assignment to accord and satisfaction.
In the demand for written interrogatories, the defendant insurer, by its counsel, Rossillo & Licata, requires the plaintiff *681 to “[sítate the number of separate rooms maintained by the Plaintiff to render treatment as of the date of the treatment.” Even though an NF-10 was not provided, this court reviewed each of the 39 “separate and distinct” affirmative defenses contained in the answer and still cannot fathom, using a test of “usefulness and reason,” how this interrogatory can possibly lead to “needful” or “material and necessary” information (Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406-408 [1968]; accord Boone v Bender, 11 AD3d 496 [2d Dept 2004]; Wiseman v American Motors Sales Corp., 103 AD2d 230, 238-239 [2d Dept 1984]; Siegel, NY Prac § 344 [3d ed 1999]). Knowing the number of rooms in the plaintiff health care facility is as helpful or “needful” as learning the shoe size of the medical provider’s principal or his/her spouse’s middle name or the make and model of the car that he/she drives. Unless defense counsel is hell-bent in reporting a local administrative fire code violation for excessive occupancy of persons, a request demanding the number of rooms in the plaintiffs facility is patently abusive.
Defense counsel goes further. It requests that plaintiff supply any verifications that may have been sent to it by the defendant. This request is burdensome because the duty to make the demand for a verification is on the insurer, not the provider. Absent compelling reasons, such as a demonstrated destruction of records, an insurer should not make such a request of a plaintiff provider. Although the offending question was part of a set of interrogatories, a holding by the Appellate Division, Second Department, in condemning a demand for a bill of particulars, noted that defendant should not seek from plaintiff items on which the defendant has the burden of proof (Somma v Sears, Roebuck & Co., 52 AD2d 784, 785 [1976]). Since an insurer generates denial of claim forms (NF-10) and demands for verification (NF-3 and NF-5), and presumably maintains such records in the course of its business, it should not be requesting a plaintiff health care provider to provide those documents.
In another offending question, with 10 subparts, inquiring as to the number of plaintiff health care facility’s employees, the insurer demands to know the number of appointments made by the assignor, rather than the number of visits actually kept. This court cannot detect the relevancy of the request without knowing the precise defense and whether it was specifically and timely asserted in the NF-10.
In a notice for discovery and inspection, the insurer demands “the names of all individuals present when the subject treat *682 ment took place” and the name of any interpreter who may have been present. Overlooking the issue of relevancy — or, more to the point, the irrelevancy — of these demands, they do not belong in a notice for discovery and inspection, but rather in a demand for interrogatories. As will be seen in numerous instances, discussed below, it appears that counsel for defendants either do not have a clue as to the specific use of each of the various discovery notices included in article 31 of the CPLR or are deliberately reinventing them in haphazard fashion. They would be well-advised to study the particular purposes of each of the discovery notices (see, Durst-Fuchsberg-Kleiner, Modern New York Discovery [Lawyers Co-operative Publ. Co. 1983]).
Finally, the insurer served a demand for an examination before trial (EBT) together with a demand for written interrogatories. In Vladimir Zlatnick, M.D., P.C. v Government Empls. Ins. Co. (2 Misc 3d 347 [Civ Ct, Queens County 2003]), the court banned the simultaneous use of a demand for written interrogatories and a demand for an examination before trial. Counsel should first proceed by use of either interrogatories or an EBT and resort only to the other discovery devices to fill in gaps, not to burden by requiring duplication of effort (id.; accord Ostia Med., P.C. v Government Empls. Ins. Co., 1 Misc 3d 907[A], 2003 NY Slip Op 51560[U] [Nassau Dist Ct 2003, Asarch, J.]; see also, Di Lorenzo v Ellison, 114 AD2d 926 [2d Dept 1985] [did not require plaintiff to respond to many items contained in a discovery demand until the completion of EBTs and then only to complete the gaps in disclosure]).
In the present case, the court will deem the simultaneous use of the EBT notice and the demand for written interrogatories to be burdensome per se. For a Zlatnick violation, this court will not only not grant a motion to compel, but will strike the discovery demands.
2. A&J Ultimate Chiropractic, EC. v General Assur. Co.
In this action, a chiropractic facility seeks the sum of $202.20. The insurer’s answer contains 15 affirmative defenses. Defense counsel has resorted to the simultaneous service of a demand of written interrogatories and an EBT notice, ignoring the holding in Vladimir Zlatnick, M.D., P.C. v Government Empls. Ins. Co. (2 Misc 3d 347 [2003], supra).
In its demand for discovery and inspection, the insurer requests copies of all denials from the health care provider. As stated above with regard to demands for verification, the duty of keeping and maintaining copies of the NF-10 is on the insurer, *683 since it generated the denial of claim. These types of demands are harassing, burdensome, and palpably improper, absent a compelling justification.
The insurer’s demand for written interrogatories inquires how the rate of interest of 2% per month and attorneys’ fees were calculated, although these are legal remedies set forth by statute, regulations, and case law, and the amount of interest and attorneys’ fees are calculated only by the Clerk of the Court after a judgment is rendered.
3. and 4. Preferred Med. Imaging, P.C. v Progressive Northeastern Ins. Co. and Acupuncture Works, P.C. v Progressive Northeastern Ins. Co.
These are two separate actions involving the same plaintiffs counsel, defense counsel, and defendant. In the action initiated by Preferred Med. Imaging, EC., the facility seeks the recovery of $1,791.73. In the action commenced by Acupuncture Works, EC., the health care provider seeks $575.
The magnitude of defendant’s abusive requests is remarkable. Here, too, no NF-10 is included to help the court. Rather, an answer was asserted in each of these two actions containing the same 17 affirmative defenses, identical word-for-word. Computers and word processors were designed to make life more comfortable and efficient; they were not meant for lawyers to suspend their use of reason and judgment by mindlessly tapping the same buttons in every case. The use of generic forms or boiler plate, engaged by defense counsel here, was soundly criticized in King’s Med. Supply Inc. v Country-Wide Ins. Co. (5 Misc 3d at 771, supra).
The function of a demand for a bill of particulars is to amplify pleadings, limit proof, and prevent surprise at trial. It may not be used to call for evidentiary material (Havens v Tucker, 136 AD2d 814, 815 [3d Dept 1988]; Di Lorenzo, 114 AD2d at 926, supra; Somma, 52 AD2d at 784, supra). In both the Preferred and Acupuncture actions, defense counsel, Freiberg & Peck, in its demand for a bill, asserted the identically worded 20 questions calling for detailed evidentiary information, not amplification of a pleading. Again, the conclusion is inescapable that the draftsman of the demand has no understanding of the discovery device of a bill of particulars or consciously chose to defy conventional, well-settled legal usage and reinvent its purpose. Defense counsel, for example, requires a list of all “medical journals, reports, textbooks” relied upon by the medical provider in arriving at a diagnosis! There is no excuse for such a ques *684 tion, especially in the context of a demand for a bill of particulars.
The demands for a bill in the two cases go further. They demand the particulars of any possible revocation of the assignment, details of any treatment plan, details of possible, contemplated treatment plans, and the reasons why the unspecified, alternative treatment plans were not utilized. If deemed relevant, these questions can be explored either in interrogatories or at an EBT (but not at the same time under Zlatnick) if the issue of medical necessity were specifically and timely raised in the NF-10. The demand for a bill also requests whether the assignor was ever treated or examined by any doctor “associated with Assignee” prior to the accident, without defining “association.” Of course, to get this information, a health care facility assignee would have to ask its patient assignor for a complete list of every possible doctor he/she may have seen during his/her lifetime only for the assignee to know whether there was some sort of “association” with it. Again, such a blunderbuss, vague, oppressive demand is made without attaching a copy of the NF-10 to the motion.
5. and 6. Rapid Scan Radiology EC. v State Farm Mut. Auto. Ins. Co. and GJW Chiropractic, EC. v State Farm Ins. Co.
In its action, plaintiff Rapid Scan Radiology EC. seeks $1,791.73. In the action commenced by the chiropractic facility, plaintiff seeks $505.50. Both cases are defended by the same law firm. In Rapid Scan, the answer sets forth 13 affirmative defenses, whereas in the action by the chiropractic provider, GJW, 14 affirmative defenses are included. Defense counsel exercised, at least, some selectivity, though not much, in approaching the two cases. In neither motion was a copy of a timely denial of claim or a timely demand for verification appended.
In both cases, an identically worded, improper demand for a bill of particulars was propounded. The nature of the evidentiary detail sought by the demands is sweeping. For instance, in inquiring about expenses, both questions one and two of both demands for a bill of particulars each contain subparts (a) through (v). Question three about lost earnings contains subparts (a) through (z) in both demands. Question four, also on the issue of expenses, of both demands contains subparts (a) through (v). The Appellate Division, Second Department, in Nazario v Fromchuck (90 AD2d 483 [1982]), reversing a lower court, granted a motion for a protective order where defendant *685 served a demand for a bill of particulars consisting of 18 paragraphs and more than 60 separate requests, much of it calling for evidentiary material. Here, in action Nos. 5 and 6, the two demands for a bill each contain the identical 92 questions, all calling for detailed evidentiary information.
Defense counsel, Devitt Spellman Barrett, LLf] also served, in both actions, an identically worded “Combined Demands,” listing 12 questions. Question six demands that a plaintiff assignee specify the name, address, and telephone number of any other provider — including pharmacists and ambulance services— visited by the patient assignor as a result of the accident. An answer might be proper and required, but only to the extent that the assignee knows the information, without requiring it to chase its assignor to obtain it.
Other questions of the combined demands reach new depths of irrelevancy. Question seven demands the name, address, and telephone number of any health care provider, dentist, pharmacist, therapist, psychologist, or even ambulance service which provided any help to the patient assignor for a 10-year period prior to the accident. Question eight inquires as to the employment of the patient assignor at the time of the accident and requires particularized information about the reason for termination or resignation. Undeterred, defense counsel goes further. Question nine requires the specifics of every position of employment held by the patient assignor for the 10-year period preceding the accident, including the reasons for leaving the job.
It is axiomatic that discovery should be limited to information which bears upon matters in controversy or is reasonably calculated to reveal information regarding the issues (see, Allen, 21 NY2d 403 [1968], supra). The court finds that, in action Nos. 5 and 6, questions regarding the employment history of a patient assignor for the past 10 years and information of every “physician, dentist, hospital, ambulance service, pharmacist, chiropractor, psychologist, therapist and other provider of medical care, any medical treatment or any medical service [seen or used by the patient assignor] . . . during the 10 years which immediately preceded the occurrence” are patently abusive. Defendants, in those two actions, failed to attach a copy of the denial of claim and are, instead, approaching discovery with a shotgun. Answers to such burdensome, blunderbuss questions are of no value to defendants, who obviously set sail on some unchartered fishing expedition.
*686 Similarly, in action Nos. 3 and 4, a recitation of every medical article, journal, and textbook ever read by a health care provider can provide no helpful information from which an insurer can mount a defense, putting aside the unknown contents of the undisclosed NF-10.
The sole purpose of defense counsel in posing such irrelevant questions and demands is transparent. The intention is to make life so vexatious, burdensome, overwhelming, and oppressive for a plaintiffs counsel, its client — the health care provider — and also the patient, that they are bludgeoned into abandoning the claim for recovery of payment. If a health care provider cannot recover because of oppressive litigation, it may seek recovery from the patient, thereby totally undermining the intention of the No-Fault Law. The above questions were evidently posited by defense counsel for such purpose and in bad faith.
To the extent that the discovery demands also contained proper requests, it is well settled that a court will not prune an improper demand in order to save the nonobj ectionable questions, but, instead, will reject the entire discovery demand (see, Haszinger v Praver, 12 AD3d 485 [2d Dept 2004]; Nazario, 90 AD2d at 484, supra; Forest Bay Homes v Kosinski, 65 AD2d 589 [2d Dept 1978]; Horn Constr. Co. v Icos Corp. of Am., 63 AD2d 939 [1st Dept 1978]).
The final issue is whether this court should strike the demands in the absence of any motion for a protective order. Counsel for the plaintiffs, indeed, did not submit opposition papers to the motions. As a practical consideration, one must surely wonder whether in claims for minor sums of money, such as those in three of the six cases, seeking $202.20, $575, and $505.50 (the other three cases each involving only about $1,800), whether a plaintiffs counsel will even consider it affordable or “smart business” to spend several hours in drafting opposition papers and traveling to and attending court appearances to challenge a patently oppressive demand.
This court is familiar and disagrees with the holding in MOPS Med. Supply v GEICO Ins. Co. (4 Misc 3d 185 [Civ Ct, Kings County 2004]), requiring plaintiffs counsel to make a motion for a protective order to deny or limit a patently harassing discovery demand. Although in most instances, the need for such a motion is desirable, the court in MOPS Med. lost sight of the fact that no-fault litigation is carved out by legislative fiat, is clothed with a set of technical and strictly construed Department of Insurance regulations, has a special mission defined in *687 statute, regulations, and case law, carries statutory monthly interest and attorneys’ fees to a prevailing plaintiff, and, therefore, should not be likened to a garden variety litigation of a common-law action. Our appellate courts have further emphasized that, in no-fault litigation, the denial of claim form is the bedrock in resolving no-fault disputes, an insurer must “stand or fall” upon its denial (King v State Farm Mut. Auto. Ins. Co., 218 AD2d at 865, supra), and the entire procedure is to be streamlined, provided that insurers have sufficient opportunity to contest illegitimate and fraudulent claims (Presbyterian Hosp., 90 NY2d at 285).
The consolidated six motions were submitted on default. This court is not a rubberstamp for every motion that is taken on default. Each such motion must be reviewed to determine whether the movant is entitled to the relief sought. In the present case, in light of the interdictions from the Court of Appeals in Presbyterian Hosp. (90 NY2d 274 [1997], supra), this court would be remiss, even derelict, if it were blindly to give its imprimatur to discovery demands that thwart the basic tenets of the No-Fault Law. Since the no-fault enactment is endowed with a special objective, for this court to sustain, even on default, a patently burdensome set of demands would make it complicit in undermining the no-fault scheme and would simply embolden the defense bar to attempt to defeat recovery by unleashing a barrage of mindless, burdensome, and oppressive discovery demands.
Finally, the court wants to caution the defense bar that, in the future, it will require the inclusion of the NF-10 denial form or proof of a timely demand for verification, the NF-3 or NF-5, in any motion to compel or preclude or strike or dismiss based on alleged failure to cooperate in discovery. Since any reason for the denial of the claim must be specifically stated in the NF-10, that form must be included so that a reviewing court can pass on the propriety of the requested disclosure in an action for no-fault first-party benefits. The need for disclosure must be substantiated by the reasons for denial contained in the NF-10 and not simply predicated upon a plethora of unpreserved affirmative defenses asserted in the answer as an afterthought.
Each of the six motions, accordingly, is, in all respects, denied.