Thomas SCANLON, Pamela Scanlon
and Karen Scanlon, Plaintiffs,

v.

The TRAVELERS INSURANCE
COMPANY, Defendant.

No. 93–CV–787.

United States District Court,
N.D. New York.

April 18, 1994.

The Law Offices of George P. Kansas,
Albany, NY (George P. Kansas, of counsel),
for plaintiffs.

Kornstein, Veisz & Wexler, New York City
(Lawrence C. Fox, of counsel), for defendant.

## MEMORANDUM–DECISION and ORDER

McAVOY, Chief Judge.

The Scanlons ("plaintiffs") bring the instant action against The Travelers Insurance Company ("Travelers") for denial of certain benefits under an insurance plan administrated by Travelers. Presently before the court are two summary judgment motions made pursuant to Fed.R.Civ.P. 56 brought forth by both the plaintiffs and Travelers.

## I. BACKGROUND

On March 16, 1989, Karen Scanlon underwent jaw surgery at St. Peter's Hospital in Albany, New York. The surgery was performed by Drs. Carmen Fasulo and Lawrence Busino.

At the time of Karen's surgery, Karen's mother was employed by Empire Blue Cross/Blue Shield ("Blue Cross") and had employee and dependent coverage under Blue Cross' health benefits plan. Concomitantly, Karen's father was employed by Conrail and had employee and dependent coverage under the Railroad Plan administered by Travelers.

Soon after the surgery, Drs. Fasulo and Busino submitted their bills to Blue Cross for $10,700 and $2,675 respectively. Blue Cross paid $5,451.25 to Dr. Fasulo and $1,362.81 to Dr. Busino. Blue Cross disallowed the remainder of both bills finding that they exceeded the reasonable and customary charges for similar services provided for in the community by other doctors.

The same bills were then submitted to Travelers with proof of the amounts already paid by Blue Cross. Travelers, as the administrator of the secondary plan, claimed that they were only responsible for any dif-

ference between the total "Allowable Expenses" as defined in their plan and what Blue Cross paid as the administrator of the primary plan. The term "Allowable Expenses" is defined in the plan as "any necessary, reasonable and customary item of expense...." Using data from the Albany area on the customary charges for the type of surgical procedures Karen received and after consultations with outside experts, Travelers determined that the reasonable charge for Dr. Fasulo's services was $6,700. Deducting the $5,421.25 plaintiffs received from Blue Cross, it was determined that Travelers was responsible for $1,248.75 as the administrator of the secondary plan. As for Dr. Busino, Travelers concluded that the reasonable charge for his services was $1,340, and since plaintiffs received more than that amount from Blue Cross, Travelers did not make any additional payments to Dr. Busino.

Neither parties dispute any of the figures just stated. Nor, do they dispute that the bills presented by the two doctors were excessive. There are only two issues in dispute in this case: (1) whether Travelers was in fact the administrator of a secondary plan; and if so, (2) how much are they liable for under the coordination of benefits plan.

## II. DISCUSSION

■ Rule 56(c) provides that the court may grant summary judgment where there are no genuine issues of material fact for trial. Fed.R.Civ.P. 56(c). If there are no genuine issues, the movant is entitled to judgment as a matter of law. When the movant meets this standard, the opposing party must present sufficient facts to demonstrate that there exists some genuine issues of material fact in order to defeat the movant's motion for summary judgment. An issue is *genuine* if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears a stringent burden of establishing that there is no genuine issue of material fact remaining for trial, as any doubt as to the existence of a genuine issue for trial is to be resolved in favor of the non-moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *see also Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1187 (2d Cir.1987) (the court must view the evidence in light most favorable to the party opposing the motion).

"Where the sole question presented on a motion for summary judgment is the interpretation of a clear and unambiguous written agreement, the issue is one of law for the court and may be decided on a motion for summary judgment. (cites omitted). This principle applies equally to contracts of insurance." *Jakobson Shipyard v. Aetna Casualty and Surety Co.*, 775 F.Supp. 606, 609 (S.D.N.Y.1991) (cites omitted).

In the case at bar, initially, plaintiffs allege that Travelers is liable for the full "Allowable Expense" irrespective of the payments made by Blue Cross because Travelers is the administrator of the Primary Plan. Plaintiffs rely on the language of the original agreement between the parties which state that "[t]he benefits of a Plan which covers the person on whose expenses claim is based as a dependant of a male person shall be determined to before the benefits of a Plan which covers such person as a dependent of a female person." (Kansas Affdvt. Exh. C). It is alleged that this so called "gender rule" was in effect at the time of surgery, and as such, Travelers is primary under the plan and is liable for the full amount determined to be "Allowable Expenses." Plaintiffs do acknowledge that Travelers did amend their plan to implement the birthday rule—under which the primary plan is the plan of the parent whose birthday falls earlier in the calendar year—but allege that this amendment was only effective during the 1988 calendar year and expired at the end of the said year. For this allegation, plaintiffs rely on the language of the document captioned "Memorandum of Agreement" which states that the policy between Travelers and the Railroad Policyholder was being renewed for the 1988 calendar year. This is also the document in which the "gender rule" was replaced by the "birthday rule."

■ Plaintiffs have misconstrued the terms of the agreement. From the plain

language of the agreement, it is apparent that the amendment of the "gender rule" to the "birthday rule" was permanent until further notice.[1] The language of the agreement simply states that the "birthday" rule was effective January 1, 1988. This language clearly manifests a change in the policy which is to take effect until it is again amended later in time. This conclusion is further supported by the "Notice of Amendment to the Railroad Plan" booklet. This booklet which was given to the Railroad employees mentions that the change from the gender rule to the birthday rule was effective January 1, 1988 without any mention of the termination date of such an amendment.[2] All these factors evidence the enforcement of the birthday rule at the time of Karen's surgery. Thus, since Karen's mother has her birthday earlier than Karen's father, Travelers, which covers Karen's father, is the secondary plan under the coordination of benefits plan. This conclusion is reached even if the facts are looked at in light most favorable to the plaintiffs.

Plaintiffs allege that even assuming, *arguendo*, Travelers' plan was in fact secondary, Travelers still wrongfully denied benefits to plaintiffs under the plan. It is alleged that Travelers, as the secondary carrier, was obligated to make up the difference between what Blue Cross paid as the primary carrier and the overall bill presented to Travelers by the two doctors.

The coordination of benefits provision in the Railroad Plan states, in relevant part:

> The Primary Plan pays benefits first and without consideration of the other plans. *The Secondary Plans then make up the difference up to the total Allowable Expenses.*

(Fox Affdvt. Exh. D at 70) (emphasis added). At first blush, the language of the provision may be clear and unambiguous, but a closer examination of the language reveals otherwise. As it is presently worded, two possible interpretations of the language at issue exists.

One such interpretation is the interpretation made by the plaintiffs. Under plaintiffs' interpretation, the provision may be read as requiring the primary carrier to first pay in accordance to their own policy and then, the secondary carrier would be required to pay the remaining balance of the outstanding bill. The secondary carrier's liability would be capped at the amount determined to be the total Allowable Expense. More specifically, the language of the provision is interpreted to mean that the second carrier must first deduct the primary carrier's payment from the total bill, and then the secondary carrier is liable for that amount up to what second carrier determined to be the total Allowable Expense. For example, using the facts from the case at bar, since the two doctors' bills were $10,700 for Dr. Fasulo and $2,675 for Dr. Busino, these figures must first be subtracted by the amount paid by Blue Cross, $5,451.25 and $1,362.81 respectively. So the difference between the total bill and the primary carrier's payment would equal $5,248.75 for Dr. Fasulo and $1,312.19 for Dr. Busino. Since these figures are lower than what Travelers determined the Allowable Expenses for Karen's surgery to be—$6,700 for Dr. Fasulo and $1,340 for Dr. Busino—Travelers is liable for the full difference under the provision. This is one interpretation of the language at issue.

A second possible interpretation is the one offered by Travelers. According to this interpretation, the secondary carrier would only be liable for the difference between what it determined to be the Allowable Expenses and the amount paid by the primary carrier. More specifically, since the total Allowable Expenses were determined to be $6,700 for Dr. Fasulo and $1,340 for Dr. Busino, and because Blue Cross already paid

---

1. The substitution of the rules came amid concerns about the possible discriminatory impact of the gender rule. *See PM Group Life Ins. v. Western Growers Assurance Trust*, 953 F.2d 543, 547 (9th Cir.1992) ("The gender rule was once the standard rule in the United States, but amid concerns about its possible discriminatory impact, the NAIC has advocated the use of the birthday rule since 1984 ... Forty-two states now use the birthday rule.").

2. The "Employee Booklet" which plaintiffs allude to in their memorandum in support of the gender rule has been amended by the "Notice of Amendment to the Railroad Plan" booklet.

out $5,451.25 and $1,362.81 respectively, Travelers liability would be the difference between the Allowable Expenses and what Blue Cross already paid. This is another possible interpretation of the coordination of benefits provision.

Although Travelers' interpretation is the more plausible interpretation of the provision in question, the court is not at liberty to make such a determination at this juncture of the proceedings. As previously stated, the court's role in a motion for summary judgment is one of issue spotting and not one of issue determination. *See Adickes*, 398 U.S. at 157, 90 S.Ct. at 1608.

■ The two possible interpretations of the coordination of benefits provision creates a material issue of fact for the fact finders to determine. Accordingly, this conclusion precludes the court from granting the pending summary judgment motions to either of the moving parties.

## III. CONCLUSION

In conclusion, since two possible interpretations of the provision in question exist, the language of the said provision is found to be ambiguous, and the court denies both parties' motions for summary judgment.

**IT IS SO ORDERED.**