OPINION OF THE COURT
Charles J. Markey, J.
*348 This court is asked to resolve an issue of first impression with wide ramifications for the conduct of no-fault litigation for first-party benefits. The issue is whether a defendant, defending a lawsuit seeking first-party benefits by an assignment, may simultaneously employ a demand for responses to interrogatories and a notice of deposition.
Generally, in no-fault litigation for first-party benefits, a medical provider has taken a patient’s assignment of benefits. The health care professional, the assignee of such benefits, who has not been paid by the insurer for the medical services provided, then, if so advised, may commence a legal action against the insurer to recover such first-party benefits. The Civil Court of the City of New York is deluged with such actions, despite the intent of the Legislature, in enacting the no-fault laws, to establish an efficient way of providing “prompt compensation for losses incurred by accident victims without regard to fault or negligence [and] to reduce the burden on the courts” (Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d 854, 860 [2003]). A review of the daily motion calendars of the Special Term Parts of the Civil Court will reveal that, by a conservative estimate, half of such motions concern no-fault first-party benefits.
The many motions and actions explain why a cottage industry has grown in law firms specializing in either the prosecution or defense of such claims. Various defense firms find different methods to contest such claims. Some defense firms appear to have resorted to filing jury demands for every first-party benefit case. The method employed by defense counsel in the present action is the routine, knee-jerk service of notices of deposition in every first-party benefits action and its insistence on a deposition, even where answers to a demand for written interrogatories have satisfied defendant’s desire for information.
By a summons and complaint dated December 6, 2002, the plaintiff, Dr. Vladimir Zlatnick, the assignee of his patient Abram Aminov, submitted a bill in the amount of $2,946.47 to defendant Government Employees Insurance Company (GEICO). GEICO paid $114.33, leaving a balance of $2,832.14. GEICO’s answer includes a denial and five affirmative defenses. On January 27, 2003, together with its answer, GEICO served upon plaintiffs counsel, Baker & Barshay, a law firm specializing in no-fault litigation on behalf of plaintiff medical providers, both a notice of deposition for Zlatnick’s testimony and a set of interrogatories.
The set of interrogatories, set forth in tiny, single-spaced lettering, numbers 24 questions, but when they are examined *349 closely, with its various subparts, they constitute about 70 questions. The interrogatories not only demand answers, but require that documents responsive to the questions be appended.
Plaintiff states that it responded in full to the interrogatories and attached a host of documents required by them. Plaintiff does not, however, attach a copy of its answers to the interrogatories, which would have been relevant to a determination of the critical legal issue at stake. Defendant GEICO, nevertheless, has not voiced any dissatisfaction or protest in any of its papers on the present motions to Zlatnick’s responses to the interrogatories.
The gist of the protest between counsel for the litigants is the right to take depositions, or “examinations before trial” (EBTs, as they are usually referred to by litigators practicing in New York state courts). The parties engage in a lengthy discourse about the need for “relevant” discovery and long polemics about protective orders from abusive devices, but they fail to discuss the specific facts of the case and, in particular, why Zlatnick’s responses to the interrogatories should not be deemed sufficient so as to avoid a deposition.
The Appellate Division, Second Department, over 25 years ago, in Matter of Simmons (Government Empls. Ins. Co.) (59 AD2d 468 [1977]) stated that the New York Legislature’s purpose for enacting a no-fault statute, the Comprehensive Automobile Insurance Reparations Act (see, L 1973, ch 13), was to lessen the burden on the courts (59 AD2d at 471-472, citing Montgomery v Daniels, 38 NY2d 41, 51 [1975]). Unfortunately, no-fault litigation has proliferated to such an extent that it threatens to engulf the Judges of the Civil Court, requiring them to make decisions on a myriad of issues of first impression, with the inevitability of conflicting results within the same courthouse, in the absence of appellate determinations, and to hold trials, some with juries, for relatively minor amounts of money (see discussion in Universal Acupuncture Pain Servs. v Lumbermens Mut. Cas. Co., 195 Misc 2d 352, 352-353 [Civ Ct, Queens County 2003]).
Concerning solely the issue involved in the case at bar, one of plaintiff’s lawyers, Steven J. Neuwirth, Esq., in his papers, states that his law firm, Baker & Barshay, has received from defense counsel, Law Offices of Teresa Spina, over 2,000 deposition notices in no-fault first-party benefits cases. Plaintiff contends that these EBT notices unduly burden medical providers and interfere with their practice of medicine, by requiring *350 an appearance at a time-consuming deposition before proceeding to trial on their bill, even where information was given in response to defense interrogatories and copies of relevant documents were furnished to defendant. In requesting a protective order, Mr. Neuwirth continues: “Moreover, at this time, the defendant has served well over two hundred motions to dismiss the plaintiffs’ actions for failure to appear for said examinations before trial. It is anticipated that this number will increase to even greater numbers.”
Since many practitioners have entered the no-fault first-party benefits specialty litigation field, the number of motions on this issue will mushroom. Currently, this court’s sole remedy from the no-fault onslaught is to limit the number of motions that any one law firm can bring in Special Term on a particular day. The remedy has not deterred the motion practice. Instead, the undersigned, for example, while sitting in Special Term, in October 2003, was constrained to give adjourned dates on motions to April 2004 — six months later — because the no-fault explosion has so clogged court calendars that litigants in all other types of cases must suffer since they cannot be given a swift adjudication of their controversies.
GEICO has moved to dismiss the complaint for plaintiffs failure to attend an EBT. Zlatnick has cross-moved for a protective order.
Although not cited by either party in this case, in Albatros Med. v Government Empls. Ins. Co. (196 Misc 2d 656 [Civ Ct, Queens County 2003]), the court held that plaintiff medical providers were required to submit to depositions in no-fault cases. The court in that case reasoned that since plaintiff elected to seek recovery in the courts, rather than by arbitration, it was bound by the garden variety set of disclosure devices made available by the CPLR.
Nothing in Albatros, however, shows that the insurer made a simultaneous use of interrogatories. In the present case, in contrast, it is undisputed that the insurer simultaneously employed both interrogatories and a deposition notice. The parties in this case, in spite of their extensive discussions and mutual charges of “hypocrisy,” did not analyze the salient issue of simultaneous employment of both interrogatories and an EBT notice.
CPLR 3130 (1) states:
“In the case of an action to recover damages for *351 personal injury, injury to property or wrongful death predicated solely on a cause or causes of action for negligence, a party shall not be permitted to serve interrogatories on and conduct a deposition of the same party pursuant to [CPLE] rule 3107 without leave of court.” (Accord, D. Siegel, NY Prac § 638, at 1100-1101 [West 3d ed 1999].)
Although this requirement of New York law in negligence actions is illuminating, the action for no-fault benefits, with its remedy of interest and attorneys’ fees for late payment, is not of common-law origin, but a creation of statute (see discussion in Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d 854 [2003], supra; see, Insurance Law § 5106 [a]).
In commercial cases, the courts have noted that the service of interrogatories, in the first instance, is helpful in order that the parties can hone in on any unresolved factual issues at a subsequent deposition (Barouh Eaton Allen Corp. v International Bus. Machs. Corp., 76 AD2d 873, 875 [2d Dept 1980] [“In complex commercial cases and when dealing with corporations, the initial use of proper interrogatories is preferred in order to save time and money”]; accord, NOPA Realty Corp. v Central Caterers, 91 AD2d 991 [2d Dept 1983]).
Although the CPLE generally permits a party to conduct pretrial discovery by utilizing both written interrogatories and a deposition notice, the courts have generally required that a party must complete one discovery device before invoking the other (see, Samsung Am. v Yugoslav-Korean Consulting & Trading Co., 199 AD2d 48, 49 [1st Dept 1993]; Giffords Oil Co. v Spinogatti, 96 AD2d 851 [2d Dept 1983]; NOPA Realty Corp. v Central Caterers, 91 AD2d at 992 [2d Dept 1983]; J & E Prods, v Lavenson, 49 AD2d 528 [1st Dept 1975]; see also, A. Colish, Inc. v Abramson, 150 AD2d 210 [1st Dept 1989]). Only when the first chosen discovery device does not satisfactorily yield information can a party utilize the other discovery device (Katz v Posner, 23 AD2d 774, 775 [2d Dept 1965]; D. Siegel, NY Prac § 350, at 543, supra [“If one device proves inadequate, the party can turn to another”]; see, e.g., Edwards-Pitt v Doe, 294 AD2d 395 [2d Dept 2002]).
As Justice Kassal wisely pointed out, in Wagner v NFS Fin. Servs. (96 Misc 2d 134, 135-136 [Sup Ct, NY County 1978]):
“[I]t has become increasingly apparent to this court that the free and unlimited employment of such devices has led to such abuse in many instances as to *352 far outweigh their beneficial attributes by way of true discovery. The same devices which, when properly employed, ‘advance the function of a trial to ascertain truth and to accelerate the disposition of suits’ (Rios v Donovan, 21 AD2d 409, 411), become oppressive when they tend to unnecessarily increase the cost of litigation and unduly delay the resolution of issues. In those cases, their use is perverted into instrumentalities of delay and their proper purpose becomes secondary and peripheral
“Here, the defendant initially elected to and did commence the deposition of plaintiff. Defendant should be required to complete such deposition before resorting to interrogatories, if still appropriate, and then only for the limited purpose of supplementation of discovery, not duplication.”
In the present case, defense counsel’s silence as to the adequacy of plaintiff’s responses to the written interrogatories speaks volumes. Not one word of protest or dissatisfaction is uttered. Defense counsel does not cite any area of inadequacy that would require resort to a second discovery device. To be sure, if a defendant insurer could point to any failure of a plaintiff medical provider in responding to interrogatories, it would permit resort to a deposition, but only, as stated by Justice Kassal in Wagner, “for the limited purpose of supplementation of discovery, not duplication.” (Wagner, 96 Misc 2d at 136; accord, Bassett v Bando Sangsa Co., 94 AD2d 358, 361 [1st Dept 1983] [Kassal, J.] [3-2 decision], appeal dismissed 60 NY2d 962 [1983].)
The Second Department, in Barouh Eaton Allen Corp. v International Bus. Machs. Corp. (76 AD2d at 874, supra), stated:
“[T]he noticing of an oral deposition prior to reviewing the answers interposed to the interrogatories and without a determination of the necessity for further disclosure, verges on an abuse of the judicial system (cf. Katz v Posner, [23 AD2d 774]). When the disclosure process is used to harass or unduly burden a party, a protective order eliminating that abuse is necessary and proper.”
GEICO, in the present case, insists on its right to a pretrial deposition, devoid of any articulation as to what was missing from plaintiff’s responses to the written interrogatories. The Court of Appeals has held that an insurer must deny a claim *353 within 30 days of receipt of the claim or have effectively extended the 30-day requirement (Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 90 NY2d 274, 286 [1997] [4-3 decision]; see, e.g., New York & Presbyt. Hosp. v Empire Ins. Co., 295 AD2d 325 [2d Dept 2002]). The Court of Appeals has further insisted that any possible defense by the insurer must be contained in the disclaimer and must be stated promptly and “with a high degree of specificity” (General Ace. Ins. Group v Cirucci, 46 NY2d 862, 864 [1979]; accord, State of New York v AMRO Realty Corp., 936 F2d 1420, 1431 [2d Cir 1991]).
In light of the holdings by the Court of Appeals in Presbyterian and Cirucci, it is incumbent upon insurers in no-fault cases to be able to justify their resort to discovery devices, and not issue them in knee-jerk fashion in every case involving no-fault first-party benefits. Especially in light of the fundamental purpose of the no-fault benefits law — the prompt payment of first-party benefits (see, Presbyterian Hosp. in City of N.Y,, 90 NY2d at 283-284) — this court will not magnify the expense of litigation by permitting resort to a second discovery device without an articulable reason therefor.
Depositions, in certain cases under the no-fault laws, for example, may be helpful in detecting instances of fraud (see, e.g., Hempstead Pain & Med. Servs., P.C. v Progressive Cas. Ins. Co., 2003 NY Slip Op 51319[U] [Nassau Dist Ct 2003]; see discussion of proliferation of fraud in Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d 854 [2003]; United States v Lucien, 347 F3d 45 [2d Cir 2003] [affirming convictions of defendants who participated as passengers in staged automobile accidents designed to exploit New York’s no-fault automobile insurance regime]).
The present case does not involve any allegation of fraud. It is a “garden variety” no-fault action by a medical care provider who was assigned benefits against an insurer.
GEICO, the defendant insurer in the present action, is not entitled to serve an EBT notice, in knee-jerk fashion, to every no-fault lawsuit filed against it, without demonstrating why responses to written interrogatories were somehow lacking. Any other result would effectively foreclose plaintiffs from litigation and subvert the purpose of no-fault laws. In the same manner that an EBT may serve a salutary function, like many other commodities, it can be used or abused as an instrumentality to harass or deter a party from enforcing its rights.
Interestingly, the Second Department, in the case cited at the outset of this opinion, Matter of Simmons (59 AD2d 468 [1977]), *354 assessed a substantial attorneys’ fees award against GEICO, according to the no-fault statute, despite a relatively small principal amount, stating:
“It is clear that the legislative plan for the prompt payment of claims such as this has thus been foiled and frustrated and the laudable intent of the no-fault law to free our courts for more important tasks has, at least to this extent, been aborted . . .
“The no-fault legislation was designed primarily to encourage speedy payment of claims, regardless of fault, and to put an end to litigation. . . It is clear that the Legislature intended that an insurance company not be able to frustrate the operation of the statute by throwing legal obstacles in the path of recovery.” (Matter of Simmons v Government Empls. Ins. Co., 59 AD2d at 473 [citation omitted].)
Despite the passage of time since Simmons, unfortunately not much has changed, and the Special Term and Trial Term calendars of the Civil Court of the City of New York are a testament to the subversion of the legislative scheme.
The defendant’s motion for an order of dismissal is, in all respects, denied, and the plaintiffs cross motion for a protective order is granted.