*643 OPINION OF THE COURT
Charles J. Markey, J.
The immortal Justice Cardozo stated: “[W]hile the workings of a novel method are untested by a rich experience[,] [t]here must be advance by trial and error” (Louis K. Liggett Co. v Lee, 288 US 517, 586 [1933] [dissenting op]). In the recent, dramatic proliferation of actions for no-fault first-party benefits, Civil Court judges are the foot soldiers required to address, in the first instance, various novel legal issues, until their appellate colleagues, often weighing the pragmatic consequences of a particular holding, get the opportunity to review decisions and thereby formulate a body of governing jurisprudence.
The important, principal issue of first impression in this state raised by the present case is the appropriate scope of an examination before trial (EBT) in an action by a health care provider for no-fault first-party benefits. Even more to the point, the main issue is whether the recent holding of first impression in Metropolitan Radiological Imaging, P.C. v State Farm Mut. Auto. Ins. Co. (7 Misc 3d 675 [Civ Ct, Queens County 2005]), making the insurer’s denial of claim form, the NF-10, “the appropriate yardstick for measuring the legitimacy of the demanded discovery” (7 Misc 3d at 680), concerning various disclosure devices available under CPLR article 31 other than depositions, now should be extended to EBTs in setting their parameters. Alternatively put, the issue is whether the subject matter of the questioning at an EBT in a case for no-fault first-party benefits — absent a case of fraud (e.g., staged accident) or lack of coverage — should be confined, in principal part, to the four corners of the NF-10.
In a summons and complaint dated August 5, 2002 and served on August 16, 2002, Baker & Barshay, LLR on behalf of its client, plaintiff health care provider Socrates Psychological Services, PC., sought the sum of $1,061.62 for services allegedly provided to its assignor, Aleksander Romanov. The defendant insurer, Progressive Casualty Insurance Company, was then represented by Delany & O’Brien.
Progressive’s answer contained 13 “separate and complete” affirmative defenses. With its answer, dated September 30, 2002, Progressive simultaneously served a demand for an EBT. Baker Barshay countered by also serving demands for an EBT and interrogatories. The simultaneous service of an EBT notice with a demand for responses to a set of written interrogatories, done by the attorneys for the parties in 2002, was *644 later barred, in Vladimir Zlatnick, M.D., P.C. v Government Empls. Ins. Co. (2 Misc 3d 347 [Civ Ct, Queens County 2003]).
The action was filed with the Clerk of the Court on June 25, 2003. Progressive’s new counsel, Freiberg & Peck, LLI] moved to compel responses to defendant’s discovery demands, and Baker Barshay, on behalf of Socrates, cross-moved for similar relief. On October 27, 2003, the parties’ counsel, resolving the motion and cross motion, prepared a stipulation in court that was so ordered by the undersigned. It required that the parties, at the risk of preclusion at trial, exchange answers to all documentary discovery demands two weeks in advance of Socrates’s deposition. The so-ordered stipulation, dated October 27, 2003, erroneously scheduled plaintiffs deposition for January 7, 2003, although a letter by defense counsel mailed on October 29, 2003, made clear that the date on the stipulation for the EBT was an obvious typographical error and that it would be held on January 7, 2004.
On January 7, 2004, the deposition of Socrates did not occur, and defense counsel Freiberg & Peck, on the same day, served a motion to strike plaintiffs pleadings for its absence at the court-ordered EBT. By cross motion, dated February 25, 2004, Socrates’s counsel, then reformed as Baker, Barshay & Neuwirth, LLf] retaliated, seeking to strike defendant Progressive’s answer for its failure to answer plaintiffs discovery demands, as required by the so-ordered stipulation.
A second round of motions and cross motions was exchanged, again rehashing the parties’ dispute on a matter as basic as discovery, this time occupying the energies of another Judge, the Honorable Kevin J. Kerrigan. Judge Kerrigan so ordered another stipulation dated March 2, 2004, believing that he had successfully brokered an agreement between the two intransigent parties. Since the copy of Judge Kerrigan’s so-ordered stipulation attached to Progressive’s present and third motion to strike Socrates’s complaint is completely illegible and the original is missing from the Court Clerk’s file, this court determined its gist from other exhibits annexed to defendant’s motion (a confirmation letter and a transcript of a deposition noting an absent witness). Judge Kerrigan, in his order, reportedly required both parties to produce witnesses for an EBT on or before May 6, 2004, at the risk of striking a pleading for the failure to so produce.
On May 6, 2004, Meredith Gursky, Esq., an associate of Freiberg & Peck who had arranged for a deposition, made a *645 statement on the record noting her production of a witness on behalf of defendant Progressive and the absence of plaintiff Socrates and its counsel. Her making a record before a court reporter was a smart, protective measure, although not necessary to gain dismissal of the complaint (see, Pueblo Med. Treatment v Progressive Cas. Ins. Co., 6 Misc 3d 1033[A], 2005 NY Slip Op 50287[U] [Civ Ct, Queens County 2005] [involving the same law firms appearing in this case; complaint dismissed for failure to abide by a court-ordered stipulation]).
On June 24, 2004, a third volley of motions and cross motions was launched, constituting the present dispute. Freiberg & Peck served a motion to strike plaintiffs complaint and sought sanctions against Baker Barshay in the amount of $132.50 for the wasted deposition session of May 6, 2004, and related costs. The motion first appeared on August 6, 2004, in Part 41, where dis-positive motions in no-fault actions are heard. On that date, Judge Denis Butler set a briefing schedule, endorsing it on the motion papers (Socrates was to serve either a cross motion or opposition papers no later than September 28, 2004; Progressive was to serve any opposition to a cross motion or, in the absence of a cross motion, its reply no later than October 27, 2004; and Socrates’s reply, should it have made a cross motion, was to be served by November 16, 2004). The new return date was scheduled for March 3, 2005 — a full eight months later, and a “Final” marking was given.[1]
*646 Plaintiffs counsel, Baker Barshay, timely served and filed the present cross motion seeking summary judgment, predicated on its allegation that Progressive’s denial of claim, the NF-10, was untimely. In its cross motion, Socrates first addressed Progressive’s motion to strike the complaint. First, Socrates complained that Progressive never responded to plaintiffs demand for verified answers to interrogatories. Without such advance discovery, plaintiff should not be thrown blindly into a deposition. Second, Socrates maintained that the stipulation that was so ordered by the undersigned in 2003 expressly made any EBT contingent on the prior exchange of written discovery between the parties. Baker Barshay had complied with its production, but Freiberg & Peck still had not done so.
Third, and most significant, Baker Barshay complained that Freiberg & Peck, in numerous other litigations between the two law firms acting as counsel, consistently abused EBT notices. Baker Barshay contended that Freiberg & Peck first takes an EBT of a managing or administrative employee of a plaintiff health care provider only to complain, subsequently and inevitably, that such a deposition proved to be insufficient and that now it needed to depose the actual doctor or health care professional who rendered the services.
Rather than adhere to the briefing schedule set by Judge Butler, on August 6, 2004, requiring that Progressive’s opposition papers to a cross motion be served on October 27, 2004, Freiberg & Peck, by an associate other than Ms. Gursky, prepared an affirmation in opposition dated March 2, 2005 — over four months late — and attempted to hand the original to the undersigned on the return date of March 3, 2005. This court, from the bench, rejected the papers, and endorsed the front sheet of the attempted opposition: “UNTIMELY PAPERS — not to be read.” The court further notes that, not only were Freiberg & Peck’s responsive papers untimely, with no excuse, let alone a compelling justification, offered for the incredible lateness, but they were not even accompanied by an affidavit of service! Adhering to its original position, this court has not read or *647 considered Progressive’s untimely opposition to the present cross motion and declines to number such late papers for purposes of the record. Accordingly, the assertions made by Baker Barshay in its cross motion, on behalf of Socrates, are not refuted.
This case, even before tackling the principal issue of the proper scope of EBTs in a no-fault first-party benefits litigation, raises several important policy decisions. First, this court underscores the importance of adhering to a briefing schedule. In countless short-form orders, this court has indicated that briefing schedules are not mere, precatory guidelines, and it has invariably rejected late responsive papers no matter how serious or worthy the contentions contained therein. If this court seeks to earn the respect of its briefing deadlines by judicial colleagues, it must scrupulously enforce the schedules set forth by fellow judges. Failure to enforce those deadlines, absent a highly compelling circumstance, furthermore, sends the wrong message to the bar and permits lawyers to conclude falsely that such deadlines are malleable (see, Starke v Bergles, 444 F Supp 469, 470 [ED Wis 1978] [United States District Court refused to read and consider reply papers that were untimely under briefing schedule]; accord, Instituto Nacional De Comercializacion Agricola [Indeca] v Continental Ill. Natl. Bank & Trust Co., 858 F2d 1264, 1270-1271 [7th Cir 1988] [violation of briefing schedule is a serious breach]; People v Velit, 2002 NY Slip Op 50066[U] [Crim Ct, Queens County 2002] [briefing schedule is not a mere precatory guideline]; see generally, Pueblo Med. Treatment, 2005 NY Slip Op 50287[U], *3, supra [court, in rejecting a second chance to take a so-ordered deposition, stated: “Any other result . . . would send a mischievous message that apparent finality actually does not mean final”]).
Second, this court is concerned about Baker Barshay’s repeated attempts to sidestep its obligations of providing court-ordered discovery. Freiberg & Peck now has had to bring three motions to compel discovery, in this action alone, on a matter as basic as a deposition. Hardly any discovery has been exchanged, no witnesses have been produced, and this Civil Court action is still languishing — now almost three years since the service of the summons and complaint — despite the efforts of two judges reviewing three motions, three cross motions, and two so-ordered stipulations.
Whenever this court identifies conduct that is inconsistent with professional norms and then comments on a lawyer’s *648 negligent lapses or active breaches, it does not do so in an effort to upbraid, embarrass, and humiliate, but rather to help eliminate the disrespect exhibited by some lawyers to their obligations, their adversaries, and the courts. By identifying and exposing such conduct, this court hopes to educate the bar and thereby deter similar lapses by other lawyers. The public’s confidence in the operation and integrity of the courts requires no less.
Holmes’s intriguing maxim that “[t]he life of the law has not been logic: it has been experience” (O.W Holmes, Jr., The Common Law, at 1 [Little, Brown & Co. 1st ed 1881]) can be appreciated by a contextual understanding of events, depicting ruthless posturing even in the cottage industry of the no-fault first-party benefits bar (see, Vladimir Zlatnick, M.D., P.C., 2 Misc 3d 347, 348 [2003], supra). In a seminal case during the proliferation of no-fault first-party benefits litigation, Albatros Med. v Government Empls. Ins. Co. (196 Misc 2d 656 [Civ Ct, Queens County 2003]), discussed in further detail below, Baker Barshay was unsuccessful in arguing to Judge Edgar G. Walker that EBTs were unnecessary in such civil actions. Following Albatros, Baker Barshay and other plaintiffs’ law firms were then hit with tidal waves of EBT notices by defense firms. The service of an EBT notice, together with an answer, is now an automatic, reflexive knee-jerk reaction by every defense firm in the no-fault first-party benefits field (see, Vladimir Zlatnick, M.D., P.C. v Government Empls. Ins. Co., 2 Misc 3d at 348, supra). As discussed below, the EBT notices, like anything else in life, serve a salutary purpose, but are also capable of being abused, even apart from the content of the entire deposition itself.
The next step in the evolution of the use of EBT notices in a no-fault first-party benefits case was the court’s holding in Vladimir Zlatnick, M.D., P.C. (id.). Zlatnick attempted to curb, in no-fault cases, the defense bar’s resorting en masse to EBT notices, coupled to a demand for answers to a set of written interrogatories. In Zlatnick, where Baker Barshay represented the plaintiff, the court, as stated above, prohibited a party from simultaneously serving an EBT notice and a demand for answers to written interrogatories. The court in Zlatnick, employing a line of reasoning from commercial litigation, prohibited such wasteful duplication of discovery. Under Zlatnick, a party would be permitted resort to a second discovery device, either an EBT or interrogatories, solely to fill in any gaps following the use of the first form of disclosure. Thus, if plaintiff provided answers to *649 interrogatories, defendant’s resort to an EBT, if truly needed, should be strictly confined to completing any gaps in the prior disclosure and not be manipulated into a vehicle to harass a plaintiff by taking discovery de novo over the same terrain.
Despite the Zlatnick holding, some litigants, principally defendant insurers, continue to serve simultaneously an EBT notice and a demand to answer a set of interrogatories. To halt such violations of Zlatnick and to put enforcement muscle to that ruling, the court in Metropolitan Radiological Imaging, P.C. v State Farm Mut. Auto. Ins. Co. (7 Misc 3d 675 [2005], supra) recently made clear, inter alia, that it would penalize a Zlatnick violation by striking one or both of the offending, duplicative notices.
In the face of multitudinous defense discovery motions demanding EBTs, Baker Barshay entered into many so-ordered stipulations in this court, agreeing to an EBT and to preclusion of evidence for failure of its plaintiff clients to attend a deposition. Only later, presumably overwhelmed by the number of obligations into which it had contractually entered and eventually cognizant of the full sweep and import of its actions, Baker Barshay sought to sidestep or ignore the so-ordered stipulations and even tried to redefine the word “preclusion.”
Out of fairness to Baker Barshay, it is conceivable that its attempt to discount its own stipulations may have been the product of client realities. Specifically, the stratagem of some, not all, defense counsel, in many litigations for no-fault first-party benefits, following Albatros, was to serve an EBT notice upon a plaintiff health care provider, not in a genuine desire to procure essential disclosure; it was served to force the plaintiffs’ no-fault bar to buckle under the weight of attending depositions in countless cases for innumerable hours, without any parameters, when each action sought only relatively little amounts of money, such as the sum of $1,061.62 in the present case (see, Metropolitan Radiological Imaging, P.C. v State Farm Mut. Auto. Ins. Co., 7 Misc 3d at 686, supra [“As a practical consideration, one must surely wonder whether in claims for minor sums of money, such as those in three of the six cases, seeking $202.20, $575, and $505.50 (the other three cases each involving only about $1,800), whether a plaintiffs counsel will even consider it affordable or ‘smart business’ to spend several hours in drafting opposition papers and traveling to and attending court appearances to challenge a patently oppressive demand”]).
*650 A principal of a plaintiff health care provider, its doctors, and managerial staff, moreover, could be pulled away from their practices and livelihoods for a time period that could entail days, litigating over minor sums. Health care providers would bewail their plight to their counsel, whereas defense counsel, well compensated by insurance carriers for both attending and stretching out a deposition, would experience no discomfort.
Mindful of the aforementioned maxim by Holmes, this is the hard core reality of no-fault first-party benefits litigation as it is currently practiced. In many cases, an EBT in a no-fault case may conceivably yield helpful information pertinent to a defense that was specifically contained in a timely served NF-10. However, the undersigned, in over three years of presiding over no-fault first-party benefits bench and jury trials, cannot recall a single instance of a defendant insurer attempting to use a plaintiffs EBT transcript at trial, either in its case-in-chief or by way of impeachment.
In making the aforementioned observations, this court is not imputing any bad motive to Freiberg & Peck in this action. Quite the contrary, the court believes that Freiberg & Peck was sincere in its desire and genuine in its need, throughout the present case, to depose the health care provider about the psychological services allegedly rendered so that it could competently defend its client. The aforementioned observations are meant solely (1) to supply a backdrop as to Baker Barshay’s actions, although a failure to meet one’s commitments cannot be excused, especially when expressed in a court-ordered stipulation, and (2) to illuminate the latent abuse of EBTs in a no-fault first-party benefits case.
Baker Barshay’s attempts to renounce, sidestep, or wriggle out of its so-ordered commitments went without success, resulting only in dismissals of its cases and judicial condemnation of its practices (see, e.g., Pueblo Med. Treatment, 6 Misc 3d 1033[A], 2005 NY Slip Op 50287[U] [2005], supra; Hoss Med. Servs., P.C. v Government Empls. Ins. Co., 4 Misc 3d 521 [Civ Ct, Queens County 2004, Walker and Siegal, JJ.]).
This court now has to discern how to approach Socrates’s cross motion for summary judgment. Three options are available. One approach would be to reject it summarily. It could well be argued that the cross motion, following two so-ordered stipulations, was nothing more than plaintiffs ploy to invoke the automatic stay of discovery that attaches upon making a dispositive motion, thereby further delaying Socrates’s EBT. *651 The two so-ordered stipulations did not contain any language directing that discovery proceed notwithstanding the pendency of any dispositive motion (CPLR 3214 [b]). In the absence of such indispensable language, the fact that the two discovery stipulations in this action were so ordered by a court still does not permit an exception to the general rule that a dispositive motion stays all discovery (see, Rizz Mgt. Inc. v Kemper Ins. Co., 4 Misc 3d 1005[A], 2004 NY Slip Op 50723[U] [Civ Ct, Queens County 2004, Siegal, J.] [reviving a so-ordered stipulation following the denial of a summary judgment motion]).
This court, in its discretion, in light of the procedural history of this case, as a second alternative, could also deny the cross motion for summary judgment without prejudice to its renewal following the completion of the so-ordered discovery (see, McGlynn v Palace Co., 262 AD2d 116, 117 [1st Dept 1999]). However, in light of the circumstances of this case, especially the years of antagonism and hostilities between the parties’ counsel that have produced a lot of motions — but no movement — in this case, this court opts for a third alternative, of tackling Socrates’s present cross motion on its merits.
The court must deny the cross motion for two reasons. First, plaintiffs counsel failed to include the entire denial of claim form, the NF-10. The copy of the NF-10 attached as an exhibit to plaintiffs cross motion contained only one sheet of the denial, but it surely must have contained more than one sheet because, in the space provided for stating the reason for the denial, the insurer typed in “see attached.” Perhaps Baker Barshay believed that the chambers of the undersigned was overwhelmed with paper and did not want to further burden the court with the remainder of the exhibit. Obviously, plaintiff’s counsel’s omission raises disturbing questions about either its carelessness or level of candor with the court. This court insists on seeing an entire NF-10 and not simply the page containing only the dates of the claim’s mailing and its receipt by the insurer.
Second, the date of the bill, as reflected on the sole sheet of the NF-10 provided by plaintiffs counsel, is January 15, 2001. The NF-10 continues, however, to state that the insurer received the bill on June 29, 2001 and allegedly denied it on July 19, 2001. The plaintiff failed to make a prima facie case for summary judgment because it did not include proof of mailing of the claim and also did not offer a proper explanation of the relevant dates (see, SZ Med. P.C. v State-Wide Ins. Co., 6 Misc 3d 132[A], 2005 NY Slip Op 50103[U] [App Term, 2d Dept 2005]; *652 A.B. Med. Servs. PLLC v Motor Veh. Acc. Indem. Corp., 6 Misc 3d 131[A], 2005 NY Slip Op 50088[U] [App Term, 2d Dept 2005]; A.B. Med. Servs. PLLC v USAA Cas. Ins. Co., 6 Misc 3d 126[A], 2004 NY Slip Op 51682[U] [App Term, 2d Dept 2004]; Amaze Med. Supply v Allstate Ins. Co., 3 Misc 3d 133[A], 2004 NY Slip Op 50447[U] [App Term, 2d Dept 2004]; Amaze Med. Supply v New York Cent. Mut. Ins. Co., 6 Misc 3d 126[A], 2004 NY Slip Op 51680[U] [App Term, 2d Dept 2004]; Comprehensive Mental v Lumbermens Mut. Ins. Co., 4 Misc 3d 133[A], 2004 NY Slip Op 50745[U] [App Term, 2d Dept 2004]; PDG Psychological P.C. v State Farm Mut. Ins. Co., 6 Misc 3d 1022[A], 2005 NY Slip Op 50150[U] [Civ Ct, Kings County 2005]; Allstate Social Work & Psychological Svcs PLLC v GEICO Gen. Ins. Co., 6 Misc 3d 1010[A], 2005 NY Slip Op 50024[U] [Civ Ct, Kings County 2005]).
“[T]he court’s role in a motion for summary judgment is one of issue spotting and not one of issue determination” (Scanlon v Travelers Ins. Co., 849 F Supp 836, 839 [ND NY 1994]; accord, Adickes v S.H. Kress & Co., 398 US 144, 157 [1970] [movant on summary judgment has “the burden of showing the absence of a genuine issue as to any material fact”]; Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957] [court’s role on such a motion is issue finding, not issue determination]; Rivera v 2160 Realty Co., L.L.C., 10 AD3d 503, 505 [1st Dept 2004]). The plaintiffs cross motion for summary judgment is, accordingly, denied.
Since discovery needs to continue in this three-year-old litigation, the court next addresses the primary issue in this case, and one of first impression in this state, of the appropriate parameters of depositions in no-fault first-party benefits litigation. In studying the matter, the court has reviewed each of the pleadings and all the motions and cross motions in the prior proceedings. Baker Barshay, as stated, in opposing the present defense motion, voiced its fear that Freiberg & Peck would not be satiated by one EBT of a managerial employee of a plaintiff health care provider, but predictably would take that deposition and then, claiming dissatisfaction with the testimony procured from the first witness, would demand to depose the doctor or professional who rendered the services.
Baker Barshay’s concern is well-founded. In a prior motion in this case, Freiberg & Peck not only quoted, but put in prominent and isolated boldface type, almost by way of sending a menacing message, the following quotation from Judge Walker’s opinion *653 in Albatros (196 Misc 2d 656, 658 [2003], supra): “Plaintiff, having elected to proceed by way of litigation in the courts, must comply with CPLR article 31. In rejecting the expeditious and economical option of arbitration, plaintiff cannot now seek to use the rules of arbitration in the courts.”
First, Judge Walker’s seminal opinion in Albatros granted to insurers the right to take EBTs in civil actions for no-fault first-party benefits, rejecting Baker Barshay’s position in that case. However, contrary to the implication of defense counsel, nothing in Albatros provides a defendant insurance carrier the right to distort a deposition into a wholesale inquisition of a plaintiff health care provider, to keep its staff hostage under questioning for days, or to demand, as a matter of entitlement in every no-fault case, to take successive EBTs. The Albatros court’s reference to the “expeditious and economical” route afforded by arbitration was not intended as some reason for punishing a plaintiff for not having so proceeded. It was no more than an observation kindred to that given to litigants on a typical evening in the Small Claims Part of this court that if they opt to be heard by an arbitrator, rather than insist upon trial before a judge of the court, their case will be heard quickly and efficiently. Sure, if a litigant chooses, whatever the nature of the dispute, to commence and maintain a civil action, as opposed to proceeding to arbitration, a court will clothe the parties with the panoply of protections provided by law, here, those disclosure devices available under the CPLR.
Baker Barshay’s opposition to the present defense motion to strike also has a substantial basis because of many defendants’ improper use of the various discovery devices afforded by article 31 of the CPLR. The court, in Metropolitan Radiological Imaging, P.C. v State Farm Mut. Auto. Ins. Co. (7 Misc 3d 675 [2005], supra), illustrated, by demonstrating in six different motions consolidated for purposes of the decision, how defense firms in no-fault first-party benefits cases were ignoring the particular purposes of each type of notice of discovery and using them interchangeably, thereby abusing plaintiffs. The court in Metropolitan Radiological refused to condone the practice and the patently abusive demands contained in the notices and denied each of the six defense motions to compel production, to preclude evidence, or to strike a pleading, although made on default. In light of the prevalent abuses of discovery notices by defense firms in that case — and two of the consolidated six cases in Metropolitan Radiological *654 involved motions by Freiberg & Peck — Baker Barshay’s concern that EBTs will similarly be abused in the present case was not paranoid.
The court in Metropolitan Radiological analyzed, under pertinent appellate rulings, that the lodestar for determining a no-fault first-party benefits case is the denial of claim, the NF-10. To avoid a plaintiffs successful motion for summary judgment, an insurer must state, with a high degree of specificity, in its NF-10, any applicable defense, except for fraud (presently defined only as a staged accident)[2] or lack of coverage, and must stand or fall upon those defenses. If not raised in a timely fashion and with specificity, those defenses will not be entertained later, no matter how meritorious they may be in substance (Metropolitan Radiological, 7 Misc 3d 675 [2005], supra [citing cases]; see, Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 90 NY2d 274 [1997]; Melbourne Med., P.C. v Utica Mut. Ins. Co., 4 Misc 3d 92 [App Term, 2d Dept 2004]; Socrates Psychological Servs., P.C. v Lumbermans Mut. Cas. Co., 4 Misc 3d 130[A], 2004 NY Slip Op 50690[U] [App Term, 1st Dept 2004] [per curiam]).
The court in Metropolitan Radiological continued that the NF-10 is the only appropriate yardstick for measuring a discovery device’s propriety, not a perusal of any number of the “separate and complete” or “separate and distinct” affirmative defenses contained in the defendant insurer’s answer. The court stated:
“In none of the six motions did the movant attach a copy of a denial of claim, the NF-10, or a timely demand for verification. Interestingly, each insurer’s counsel appended the pleadings, including its answer so as to demonstrate, seemingly and superficially, that the demanded discovery of information and documents must surely come within some affirmative defenses contained therein. The discussion above, however, highlights that what is essential is not some invocation of a defense or the inclusion of *655 an answer containing numerous affirmative defenses, but proof that a particularized defense was stated in a denial of claim with a high degree of specificity and was done so timely. . . .
“Review of the NF-10 is indispensable; it is the appropriate yardstick for measuring the legitimacy of the demanded discovery.” (Metropolitan Radiological, 7 Misc 3d at 679-680.)
The reasoning of Metropolitan Radiological applies equally to the present situation of the appropriate scope of an EBT. This court holds that, apart from eliciting appropriate pedigree and background information of the witness, the subject matter of a deposition in a no-fault first-party benefits case is to be limited to the defenses that were specifically raised in the NF-10. The four corners of the denial of claim form, the NF-10, and defenses there stated with a high degree of specificity (General Acc. Ins. Group v Cirucci, 46 NY2d 862, 864 [1979] [per curiam]), should yield the examining attorney at an EBT sufficient and fertile avenues of disclosure.
The questioning at an EBT in appropriate cases of fraud and lack of coverage — as defined by appellate courts as exceptions to the general rule that defenses not specifically and timely asserted in the denial of claim, the NF-10, are deemed waived — is not to be limited to the NF-10, especially in light of the Court of Appeals’ avowed public policy to help combat fraudulent no-fault first-party benefits claims (Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d 854 [2003]; accord, United States v Luden, 347 F3d 45 [2d Cir 2003] [affirming convictions of defendants who participated as passengers in staged automobile accidents designed to exploit New York’s no-fault automobile insurance regime]; see, e.g., Hempstead Pain & Med. Servs., P.C. v Progressive Cas. Ins. Co., 2003 NY Slip Op 51319[U] [Nassau Dist Ct 2003] [ordering EBT of medical provider]; Matter of National Grange Mut. Ins. Co. v Vitebskaya, 1 Misc 3d 774 [Sup Ct, Kings County 2003] [petitioner insurer’s request to stay arbitration was granted in view of showing that collision was staged]). The present case does not involve any allegations of fraud or lack of coverage.
As to Freiberg & Peck’s alleged penchant for needlessly taking successive EBTs, not every no-fault first-party benefits case will require a deposition of the actual health care professional. A deposition of the professional could be required where defenses of medical necessity or concurrent care were specifically and *656 timely asserted in the NF-10. In all other cases, the EBT of a managerial or administrative employee of the plaintiff health care provider should be sufficient as to the contents of the health care file on the assignor, its authentication, and the dates of mailing and receipt of pertinent insurance forms. At any rate, this court, for present purposes, considering the issue of first impression of the appropriate contours of an EBT in an action for no-fault first-party benefits, does not need to establish rules for every permutation and nuance that may arise in other cases.
In this case, the court determines that Freiberg & Peck is entitled to depose Socrates, by taking the EBTs of both a managerial employee and the health care professional who actually rendered the services. Since the dates of the mailing and receipt of various important insurance forms, including the claim, the all-important denial of claim form (11 NYCRR 65-3.8), any timely demand for verification, the NF-3 or NF-5, or demand for additional verification (11 NYCRR 65-3.5), may be important at the trial of this action, an EBT of Socrates’s managerial person with such knowledge is appropriate and hereby ordered. The court also orders the deposition of the psychologist who allegedly rendered the services. Baker Bar shay’s inclusion, in its present cross motion, of only the first page of the NF-10 was, as indicated, not forthcoming in candor, and this court thus draws the inference that the sole page’s reference to “see attached [sheets]” regarding the reasons for the claim’s denial, would permit ample justification for the psychologist’s EBT.
Defense counsel, in the present case, should not question the witness as to affirmative defenses raised in the answer that were not included in the NF-10, unless the case involves the currently recognized exemptions of fraud (e.g., staged accident) and lack of coverage. Questions that seek irrelevant facts, such as the number of rooms in the plaintiff health care facility, the plaintiff’s monthly rent, the number of persons in plaintiffs employ, trivial information, or the reasons that propelled the health care professional to enter schooling in his/her field of expertise, will not be tolerated.
This court cautions members of the defense bar, in no-fault first-party benefits litigation, who move to compel an EBT, to preclude evidence, or to strike a complaint based on the plaintiffs failure to appear for a noticed deposition, to append a complete copy of the denial of claim form, the NF-10, as an exhibit to the motion — except for a situation identified in the motion papers as involving the exemptions to the rule of waiver of *657 fraud, (e.g., staged accident) and lack of coverage. Absent a legitimate, compelling justification for not attaching it, the failure to include the NF-10 as an exhibit will constitute summary-grounds for the motion’s denial (see, Metropolitan Radiological Imaging, P.C., 7 Misc 3d 675 [2005], supra). Even on motions to enforce a prior so-ordered stipulation, inclusion of the entire NF-10 is helpful to a court in determining the appropriate relief.
Finally, while appreciating Baker Barshay’s reluctance to proceed to EBTs in this case for the justifiable grounds set forth above, this court is not content with its failure to adhere to the terms of so-ordered stipulations. No citation to a case involving stipulations should be necessary to remind plaintiffs counsel of the importance of meeting, at the very least, its written commitments and obligations, let alone those bearing the imprimatur of a court (if Baker Barshay needs such reminders, it should consult both Pueblo Med. Treatment, 6 Misc 3d 1033[A], 2005 NY Slip Op 50287DJ] [2005], supra, and Hoss Med. Servs., 4 Misc 3d 521 [2004], supra). Plaintiffs counsel need look only at the namesake of its own client, the Athenian philosopher of the fifth century B.C.E., Socrates, who both lived and died in a manner reflecting an unwavering commitment to truth and integrity. The corporate Socrates in the present case might not be condemned to drink a cup of poisonous hemlock, but it is, by this court’s order, forced to proceed to the deposition to which it had previously committed itself in two so-ordered stipulations.
In light of the evident antagonism between counsel, in this and other pending litigation, and their refusal to budge and seek accommodation, this court is constrained to detail the terms of engagement for discovery. This court directs and orders that, no later than April 20, 2005, with regard to the set of interrogatories served by Baker Barshay on October 17, 2002, Progressive is to serve complete answers upon Socrates to all of plaintiffs interrogatories. Each answer is to be prefaced by a restatement of the interrogatory, and the set of Progressive’s answers must be served in verified form, so as to be usable by Socrates at an EBT or trial. If Progressive’s answers are not served timely, Socrates’s counsel shall settle an order, upon notice, for the undersigned’s signature, striking defendant’s answer with prejudice and entering judgment for plaintiff in the amount of $1,061.62, with statutory monthly interest and statutory attorneys fees, and the costs and disbursements of the action. Such a proposed order shall be submitted initially to the *658 Clerk of Special Term, in room 357, for initial review before onward transmission to chambers.
This court agrees with Socrates’s contention that, pursuant to the plain terms of the so-ordered stipulation dated October 27, 2003, and filed with the Clerk of the Court on October 28, 2003, the holding of any EBTs was contingent upon Progressive’s production of discovery, which defendant failed to do. In this regard, and only because of its failure to provide court-ordered disclosure to Socrates in advance of EBTs, Progressive’s demand for sanctions is, in all respects, denied. Before a party invokes sanctions — and this court would unhesitatingly issue such relief in an appropriate case, and for a sum far greater than that demanded in the present motion — a party should be ready to show its “clean hands,’.’ which was not done here. Should another sanctions motion become necessary in this case by either party, it shall be referred to the undersigned for determination. The court puts both counsel on notice that, henceforth, if improper conduct is committed, the sum awarded in sanctions may well include the attorneys’ fees and related costs of all the prior motions, including the preparation of papers and court appearances, and any amount assessed upon a law firm may not be passed on as a charge to its client.
Also, no later than April 20, 2005, and to the extent not previously provided (although the court believes, on the papers provided, that Socrates has done so), Baker Barshay shall mail to defense counsel the complete health care file maintained by Socrates on the assignor.
Provided that the aforementioned directions are followed, Progressive shall depose the plaintiff on May 11 and 12, 2005. First, on May 11, 2005, at 10:00 a.m., at a deposition facility in Queens County, Progressive shall depose a managerial person of Socrates, focusing principally on the dates of the issuance and receipt of the claim, the denial of claim, and the requests for verification and additional verification. Then on May 11, 2005, at 12:00 noon, and continuing on May 12, 2005, at 10:00 a.m., only if necessary, Progressive shall depose Dr. Mitchell Philip Flaum, Ph.D., as to the psychological services provided. Dr. Flaum’s deposition, aside from obtaining relevant pedigree and background information from the psychologist, shall be strictly limited to exploring the defenses asserted in Progressive’s denial of claim form, the NF-10.
On May 18, 2005, at 10:00 a.m., at a deposition facility in Queens County, Socrates shall depose an employee of Progres *659 sive with knowledge of the particular dates of mailing and receipt of the aforementioned claim, the denial of claim, and the requests for verification and additional verification. On May 18, at 12:00 noon, and continuing on May 19, at 10:00 a.m., only if necessary, Socrates shall also depose the claims examiner of Progressive who is in charge of the assignor’s file and possesses knowledge of the facts underlying all of the denials contained in the NF-10.
Only for good cause shown, the court may extend any of the above deadlines by the sending of a letter application to chambers, preferably with the consent of both counsel, requesting and marking a designated space for a so-ordered endorsement, provided that it contains dates certain for all of the aforementioned EBTs.
Should the parties require immediate rulings on the appropriateness of any question or direction not to answer, during any of the aforementioned EBTs, they, in the presence of the court reporter, and by speaker phone if available, shall call the chambers of the undersigned. Only in the event that the undersigned is unavailable for rulings, both counsel shall appear, with the court stenographer and copies of this decision and order, in room 357 of this court, at 3:00 p.m. of the date of the EBT, and request to be heard by the judge then presiding in Special Term, Part II. The court also cautions both law firms that if it determines and concludes that any party or its counsel is being disruptive, it will, after hearing arguments, strike that party’s pleading and also schedule a hearing to determine the amount of sanctions to be assessed against the law firm itself.
Following the conclusion of all depositions, Socrates shall serve and file a notice of trial. No further motions for summary judgment may be filed by either party in this action.
The defendant’s motion is thus granted only to the extent indicated above.

. The adjournment of eight months in Part 41 given by Judge Butler was the standard adjournment given to nearly all cases, barring exceptional circumstances, that appeared on the Part’s August 6, 2004 calendar. When the undersigned presided in the Part on March 3, 2005, the next standard adjournment was over nine months later, requiring counsel to return in mid-December 2005. The lengthy adjournments are given even on simple motions. They reflect the overflowing dockets of no-fault first-party benefits cases. The return dates are understandably intolerably long, and they would, in fact, be longer but for a rule of this court that bars a law firm from filing more than 10 motions in one day. The Clerk of Special Term and the Part Clerk strictly enforce that rule. WTiere a law firm in a no-fault first-party benefits case has filed more than 10 motions in one day, the excess gets “marked off’ during the call of the calendar “as a violation of the Court’s Rules.” This entire situation may warrant the Legislature’s attention and the Office of Court Administration’s scrutiny on how to better control the massive dockets and yet reduce the lengthy adjournments given on even routine motions. For example, if the parties, on the original return date, get an automatic adjournment as of right of over nine months until the next court appearance — when the judge presiding in Part 41 may take a motion on submission, a litigant’s options are paralyzed for a length of time that defeats justice. These reflections about the current morass echo the observations articulated by other *646 courts (see, Vladimir Zlatnick, M.D., P.C., 2 Misc 3d at 348, 354, supra [current, abusive litigation practices represent a “subversion of the legislative scheme” for speedy payment, disputation, and resolution]; Ostia Med. v Government Empls. Ins. Co., 1 Misc 3d 907[A], 2003 NY Slip Op 51560[U] [Nassau Dist Ct 2003, As arch, J.] [court “swamped” with no-fault litigation]; Universal Acupuncture Pain Servs. v Lumbermens Mut. Cas. Co., 195 Misc 2d 352, 352-353 [Civ Ct, Queens County 2003] [teeming dockets threaten “to engulf the state judiciary”]).

. One legal issue that has not been definitively resolved by the Court of Appeals is whether a fraud of a health care provider that is accused, not of excessive or unnecessary billing, but of submitting claims to an insurance carrier for services that were never rendered, should be likened to a staged accident and, therefore, exempt from the general rule of waiver, even though the defense of such a scheme’s existence was not timely and specifically asserted in the NF-10 (but see, Melbourne Med.., P.C. v Utica Mut. Ins. Co., 4 Misc 3d 92 [App Term, 2d Dept 2004]).